LAEL *v.* CROOK.

4-4354

Opinion delivered October 5, 1936.

*Thomas W. Raines,* for appellant.

*A. J. Johnson,* for appellee.

MEHAFFY, J. On January 6, 1909, A. J. White and M. A. White, his wife, executed and delivered to W. H. Lyle the following deed:

"Know all men by these presents:

"That we, A. J. White and M. A. White, his wife, for and in consideration of the sum of Seventy-five and No/100 Dollars cash in hand to us paid by W. H. Lyle, commander of Camp Ben McCullough of Lincoln County, Arkansas, do hereby grant, bargain, sell and convey unto the said W. H. Lyle, commander of Camp Ben McCullough and unto his successors and assigns in office forever the following lands situated in the County of Lincoln and State of Arkansas, to-wit:

"The northeast quarter of southwest quarter of section twenty (20), township nine (9) south, range seven (7) west, containing ten (10) acres of land, more or less, with all water privileges, that is to say, to have the use of the water of both springs free of all charges with free ingress and egress to and across the northeast quarter of southwest quarter of said section 20 to and from the lands herein conveyed to the two springs of water herein mentioned.

"To have and to hold the same unto the said W. H. Lyle, commander of Camp Ben McCullough and unto his successors and assigns forever, with all appurtenances thereunto belonging. And we hereby covenant with the said W. H. Lyle, commander of Camp Ben McCullough, and unto his successors and assigns forever, that we will forever warrant and defend the title to the said lands against all lawful claims whatsoever. And I, M. A. White, wife of the said A. J. White, for and in consideration of the said sum of money, do hereby release and relinquish unto the said W. H. Lyle, commander of Camp Ben McCullough, and his successors and assigns forever, all my right of dower and homestead in and to said lands.

"WITNESS our hands and seals this 6th day of January, 1909.

"A. J. WHITE,
"M. A. WHITE."

Said deed was properly acknowledged and recorded.

On July 19, 1929, Camp Ben McCullough of confederate veterans adopted a resolution authorizing W. M. Crook, commander of the camp, to execute a deed to the property described in the deed from White to the camp, to camp Wiley Crook, Sons of Confederate Veterans, and chapter J. Mart Meroney, U. D. C. of Lincoln county, Arkansas. On August 6, 1930, the deed, as provided for in the resolution, was executed by W. M. Crook, commander.

On December 6, 1934, the appellant, J. A. Lael, brought this suit asking that the deed from A. J. White and wife be construed as a tenancy in common in the plaintiff and surviving members of camp Ben McCul-

lough, parties who paid the consideration, and that the deed from camp Ben McCullough to camp Wiley Crook be canceled and title divested out of it and vested in appellant and other survivors who paid the consideration for the deed, and that the deed to J. L. Scott be canceled and title be divested out of J. L. Scott and vested in appellant and other survivors who paid said consideration.

The following statement of facts was agreed to and introduced in evidence:

"In addition to the written documentary evidence introduced before the court the following witnesses were duly sworn as follows: J. A. Lael, W. M. Crook and R. Lee Fish.

"J. A. Lael testified that he was the plaintiff; that he was a member of Camp Ben McCullough, No. 542, of the United Confederate Veterans in Lincoln County; that in the year 1909 Camp Ben McCullough as such purchased from A. J. White and wife the lands involved in this suit and took his deed thereto which was introduced in evidence. That at the time of the purchase of said lands the camp had a membership of seventy-two (72); that the grounds or lands involved have been used by the camp since that time as a reunion ground.

"W. M. Crook testified that he was the present commander of the Camp Ben McCullough No. 542 of the United Confederate Veterans; that the camp had no written constitution; that it conducted all its business including the purchase, lease or sale of its lands by motion or resolution passed by a majority of the members present at the annual meeting of the camp in July of each year. That the conveyance to sons and daughters involved and introduced in evidence before the court here was so authorized and executed and was without consideration except to maintain the reunion.

"R. Lee Fish testified that he was familiar with the transaction and took the acknowledgment to the deed executed by A. J. White and M. A. White to W. H. Lyle, then commander of Camp Ben McCullough No. 542 of the Confederate Veterans; that the lands had been used

for the purpose of a reunion ground since that time; that the camp held a reunion in July of each year and has been conducted and held by the camp itself consisting of the membership of old soldiers as long as they were physically able to conduct the reunion celebration. About 1930, owing largely if not wholly to their physical weaknesses, they turned over the responsibility of maintaining the reunion to the sons and daughters. The grounds have been used for the purpose of this celebration solely and only since 1909."

The chancery court entered a decree in favor of appellees, and this appeal is prosecuted to reverse said decree.

It is contended by the appellant that since the evidence shows that Camp Ben McCullough had no constitution and by-laws authorizing it to take and hold property in the name of W. H. Lyle, commander, that the deed from White and wife to Lyle was in effect a conveyance to an unincorporated association, and that the title to said property by said conveyance vested in the individual members of the association of confederate veterans, known as Camp Ben McCullough. Appellant calls attention first to the case of *German Land Ass'n* v. *Scholer*, 10 Minn. 331.

The court said in that case: "The German Land Association, being a mere voluntary association of persons unincorporated, had no legal capacity to take or hold real property. A grant to such association *eo nomine* would pass no legal title."

The court also said in that case: "The authorities in the United States are by no means harmonious as to the source or extent of the power of courts in this class of cases."

The court in the case mentioned, however, held that there was no person or persons named as grantee in said deed, and for that reason if any title passed, it went to the persons who made up the old association. But the court did not hold that the deed would be void if made to certain named persons as trustees.

The next case relied on by appellant is *Clark* v. *Brown*, 108 S. W. 421. The court in this case said: "Members of voluntary, unincorporated associations, can hold property in no other way than through the medium of trustees, acting as depositaries of the legal title, and this equitable interest entitles each beneficiary to the same voice in the management and control of the property as if he were a joint owner and holder of a legal title. The rights of members of churches and other voluntary associations not organized for commercial purposes, in the property held for a common use, is one of user only." This case, however, was concerned chiefly about the rights of the church membership, and the right to create unions, etc. It does not discuss the question involved in the instant case.

The next case to which appellant calls attention is *Douthit* v. *Stinson*, 63 Mo. 268. In this case it was said: "In *Austin* v. *Shaw*, (10 Allen (Mass.) 552), it was decided that where a man mortgaged his land to certain persons named in the mortgage deed, but described as officers of an unincorporated association, the legal title vested in the persons described and not in the company. * * * Had the deed been made to one or more of this supposed board by name, describing them as directors or trustees, the deed might have been upheld on the authority of the Massachusetts and New Jersey cases above referred to, although the decision in Minnesota holds the deed void even in such cases."

Appellant also calls attention to 5 C. J. 1343, which holds that a voluntary association, having no legal existence, is ordinarily incapable as an organization, of taking or holding property in its associate name; but the paragraph immediately following this, on page 1344, is as follows: "To avoid the inconveniences resulting from the incapacity of a voluntary association to take and hold property as an organization, conveyances may be made to trustees for the use and benefit of the association or its members. In such case, the legal title vests in the trustees."

Attention is next called to the case of *Ward* v. *Mc-Math,* 153 Ark. 506, 241 S. W. 3. In that case we held that by the terms of the deed the grantor expressly conveyed to the parties named therein, designated trustees of Pat Cleburne Camp, United Confederate Veterans No. 191, and unto their successors and assigns forever, for the consideration named therein, the land in controversy, describing it. The court also held in that case that the language of the deed showed clearly that the land conveyed was trust property to be held in trust by the trustees, their successors and assigns for the use and benefit of the camp. That the legal title was thus vested by the unmistakable language of the deed in the trustees as individuals, while the equitable title was vested in and held by those who then constituted the members of the camp and who could be readily ascertained according to the constitution and by-laws of the association governing its membership. The deed was held not to be obnoxious to the rule against perpetuities which prevents alienation.

Another case mentioned by appellant is *Hopkins* v. *Crossley,* 132 Mich. 612, 96 N. W. 499. In that case the court held that such a trust as the facts showed existed there was only sustainable as a charity, and since the doctrine of charitable uses did not exist in Michigan, the trust was void. The principles announced there have no application to the case at bar.

Counsel also call attention to the case of *Goesele* v. *Bimeler,* 14 How. 589, 14 L. Ed. 554. In that case a number of persons formed a society and purchased land amounting to about 10,000 acres. It was paid for by the labor of the members of the society. It was alleged that Bimeler acted fraudulently as their agent in taking the deed and title papers to himself and his heirs forever. There seems to be nothing in that case in conflict with the principles announced here.

In Devlin on Real Estate, vol. 1, p. 179, the question of deed to trustees of an unincorporated association is discussed, and it is announced that in a deed to a number of persons who are described as trustees of an associa-

tion not appearing to be incorporated, it is to be assumed that the association is a partnership of individuals of which the grantees were members. They are not to be considered mere trustees, holding simply a nominal title. It is immaterial whether, such deed is to be regarded as made to the grantees named individually or as a conveyance for their benefit, and that of others. In either case, the persons named as grantees have the authority to sell the property and to convey good title.

In the instant case the property was conveyed by White and wife to Lyle, commander. He had the legal title, and had the right to convey it. It was held, of course, in trust for the camp, but under our decisions it was a valid deed to Lyle. Not only has this court held that a deed made to persons, naming them, as trustees, conveys good title and that trustees have the legal title and may convey the property; but this seems to be supported by the weight of authority. *East Haddam Central Baptist Church* v. *East Haddam Baptist Ecclesiastical Society*, 44 Conn. 259.

The deed from White and wife is valid. The deed made by Crook, commander, to camp Wiley Crook, Sons of Confederate Veterans, and Chapter J. Mart Meroney, Daughters of Confederacy, is not valid, because it was made to the unincorporated association which had no power to acquire property in its name. *Philadelphia Baptist Association* v. *Hart*, 4 Wheat. 1, 4 L. Ed. 499.

In conveyances of real estate there must be a grantee, and the grantee must be capable of contracting. The requisites of a deed are that there be persons able to contract with for the purpose intended by the deed, so that in every grant there must be a grantee, a grantor, and thing to be granted. It is essential that the grantee be a person, natural or artificial, capable of taking a title at the time of the conveyance. *Duffield* v. *Duffield*, 268 Ill. 29, 108 N. E. 673, Ann. Cas. 1916D 859; *Wiehl* v. *Robertson*, 97 Tenn. 458, 37 S. W. 274, 39 L. R. A. 423.

As the deed made by Crook was to an unincorporated association, it was invalid. But the appellant's rights were in no way affected by the deed. The legal title was

still in the successor of Lyle. The property was devoted to the same use that was intended in the original conveyance, and the legal title, still being in the successor of Lyle, the appellant had no cause of action. It is stated, however, in the brief that the chancellor, in his oral findings, and declarations of law, suggested that the commander should convey, as commander, to the ranking officer of the organizations, and that this has been accomplished and a new deed made from the commander to the commanding officers of the organizations. This conveyance, if made to the ranking officer as trustee, would be a valid conveyance.

It is not claimed that there was a breach of the trust. There is no claim that the property had been diverted to any other use than that originally intended. The opinion in *Gravette* v. *Veach*, 186 Ark. 544, 54 S. W. (2d) 704, in so far as in conflict with this opinion is overruled. The decree of the chancery court is correct, and it is therefore affirmed.