## BANK OF OAK GROVE *v.* WILMOT STATE BANK

83-21                                   648 S.W.2d 802

Supreme Court of Arkansas
Opinion delivered April 18, 1983

*Griffin, Rainwater & Draper,* for appellant.

*Arnold, Hamilton & Streetman,* for appellee.

STEELE HAYS, Justice. This dispute arises from the foreclosure of land subject to three mortgages. It is agreed the property is subject to a first mortgage to First Federal Savings and Loan Association of Pine Bluff (now First South), but the Bank of Oak Grove (appellant) and the Wilmot State Bank (appellee) each claim to have a second mortgage. The Chancellor ruled in favor of the State Bank of Wilmot and the Bank of Oak Grove has appealed. We affirm the Chancellor.

The facts are not in dispute: George and Carolyn Bailey own two residential lots in Wilmot, Arkansas, subject to a first mortgage to First South dated March 19, 1979. On September 14, 1979, the Wilmot State Bank recorded its mortgage from the Baileys securing an indebtedness of $21,249.90. The margin of the record shows this mortgage to have been satisfied in full on January 28, 1980, but a later marginal entry on August 28, 1980, states that the release was entered by mistake and the indebtedness remains outstanding.

A few days after the mortgage to the Wilmot State Bank was mistakenly satisfied, the Baileys sought a loan from the Bank of Oak Grove, Louisiana. After satisfying itself that it would have a second mortgage, the bank agreed to make the loan and used a method familiar to lenders in Louisiana, i.e., taking a note from the Baileys payable to bearer and a mortgage identifying the mortgagee only as "any future holder," Appellant explains that under Louisiana practice this financing device, known as a collateral mortgage, allows the free negotiability of the debt; that the term "any future holder" is not intended to name a specific individual but only whoever may be a future bearer of the note. Appellant submits the Supreme Court of Louisiana has expressly recognized the use of nominal or "straw" mortgagees and, hence, mortgages to "any future holder" are valid in Louisiana. *Commercial Germania Trust and Savings Bank* v. *White,* 81 So. 753, 145 La. 54 (1919).

When the Baileys defaulted in their payments the Wilmot State Bank commenced foreclosure proceedings. Wilmot State Bank concedes First South's status as first mortgagee, but claims to have a prior lien as against "any future holder", which it attempted to serve by warning order. The Bank of Oak Grove intervened and, after a hearing, the Chancellor held that the mortgage to the Oak Grove Bank was void as to the Wilmot State Bank because "any future holder" was not a legal entity capable of holding title to land.

Appellant concedes title to real property is governed by the law of its situs and that Arkansas law requires that in conveyances of real property the grantee must be a legal entity, so that title can vest in either an individual, a partnership or a corporation. This was our holding in *Lael v. Crook*, 192 Ark. 1115, 97 S.W.2d 436 (1936), and in *North Little Rock Hunting Club v. Toon*, 259 Ark. 784, 536 S.W.2d 709 (1976), on which the Chancellor relied. In *Lael v. Crook*, we held that a deed to "Camp Wiley Crook, Sons of Confederate Veterans, and Chapter J. Mart Meroney, Daughters of Confederacy" was invalid, as there was no legal capacity by the grantees to take or hold title to real property. We recently applied the same reasoning to a lease of hunting rights to an unincorporated association of individuals. See *North Little Rock Hunting Club v. Toon*, *supra*. In *Toon*, we were asked to distinguish *Lael v. Crook* because that case involved an attempt to convey title in fee, whereas in the *Toon* case only a lease for years was involved. We refused to make that distinction, noting that a lease, like a deed, "is properly a conveyance of a particular estate in lands, whether for life or for years or at will when reversion is left to the grantor. 2 Blackstone Comm. 367; Tiedeman on Real Property, § 772."

Appellant argues that because we are construing a mortgage rather than a deed or a lease, the *Lael* and *Toon* cases should be distinguished; it submits that Arkansas applies a lien theory to mortgages as opposed to a title theory and, hence, we should relax the strict requirements applicable to deeds and leases. The appellant has cited no authority, and we are unwilling to decide the issue on as

broad and undefined a principle as lien versus title theories of mortgages. Our cases do not support the argument that clearly. While recognizing that parties to a mortgage have duality of interest in mortgaged lands, our decisions suggest that a legal title does, indeed, pass from the mortgagor to the mortgagee, the former retaining only an equitable interest, conditioned on payment of the indebtedness. *Harris* v. *Collins,* 202 Ark. 445, 150 S.W.2d 749 (1941); *Morgan Utilities, Inc.* v. *Kansas City Life Insurance Co.,* 183 Ark. 492, 37 S.W.2d 90 (1931); *Fitzgerald* v. *Chicago Mill and Lumber Co.,* 176 Ark. 64, 3 S.W.2d 30 (1928). Dr. Leflar evidently regards mortgages as resulting in a transfer of title:

> "The giving of a mortgage on land is a transfer of a title interest in the land, and the security interest given by a mortgage is a fee simple or lesser estate, usually corresponding to the estate owned by the mortgagor." See Leflar, American Conflicts Law, 3rd Edition, § 171, P. 442.

We must reject, as well, the argument that we should consider the law of Louisiana in determining the effect of the term "any future holder", because of the rule that contracts are interpreted in light of the law where the contract was made. We find no reference in the note to "any future holder". That term appears only in the mortgage. It is clear that we apply the laws of Arkansas to transactions involving lands within our boundaries. *Tate* v. *Dinsmore,* 117 Ark. 412, 175 S.W. 528 (1915); *Crossett Lumber Co.* v. *Files,* 104 Ark. 600, 149 S.W. 908 (1912).

We take the appellee's point of view because any attempt to engraft onto the substantive and procedural law of Arkansas, methods peculiar to another state and wholly different from our own, but affecting lands in Arkansas, would surely spawn problems better avoided. Confronted with that choice, we are compelled to rely on the only laws we can claim familiarity with — our own.

The decree is affirmed.