Richard **MITCHELL**; Larry Cotten; **First National Bank of Fort Smith, Arkansas, Plaintiffs–Appellees,**

v.

**STATE FARM FIRE & CASUALTY COMPANY, Defendant–Appellant.**

No. 89–1192.

United States Court of Appeals, Tenth Circuit.

April 25, 1990.

Phillip S. Figa (Emily Kahn Kemme with him on the briefs) of Burns & Figa, P.C., Denver, Colo., for plaintiffs-appellees.

Alan Epstein of Hall & Evans (William J. Hunsaker of Makris and Hunsaker, with him on the briefs), Denver, Colo., for defendant-appellant.

Before BRORBY, EBEL, Circuit Judges, and JOHNSON *, District Judge.

PER CURIAM.

Defendant-appellant State Farm Fire and Casualty Company (State Farm) appeals the trial court's grant of partial summary judgment to plaintiffs-appellees on the ground that Arkansas law, rather than Colorado law, governs determination of the amount due to plaintiffs under an insurance policy issued by State Farm on a Colorado property destroyed by fire. We reverse.

*Facts*

The following facts are undisputed unless otherwise noted:

On September 6, 1976, State Farm, an Illinois corporation, issued an insurance policy for fire and extended coverage (Policy) on a property described as Units 1, 2, 3 and 4, Westerly Condominiums (Property) in the town of Mt. Crested Butte, Colorado. The insureds under the Policy, which was issued and serviced out of State Farm's office in Englewood, Colorado, were Colorado residents. In late 1981, the Policy was assigned to plaintiffs-appellees Larry Cotten and Richard Mitchell in connection with their acquisition of the Property. Both Cotten and Mitchell are Arkansas residents. Plaintiff-appellee First National Bank of Fort Smith, Arkansas (FNB), which is the mortgagee on the Property and hence the principal Policy beneficiary, is also an Arkansas resident. The Policy does not indicate what state law governs issues regarding its operation and effect.

On May 27, 1985, the Property was totally destroyed by fire. Under the terms of the Policy, Mitchell and Cotten were entitled to the following recovery for this loss:

1. Replacement cost.

   a. Unless otherwise specified, loss shall be adjusted on the basis of the replacement cost value of the property insured hereunder, but the limit of liability of the Company shall not exceed the least of:

   (1) the full cost of replacement of such property at the same site with new material of like kind and quality, without deduction for depreciation;

   (2) the cost of repairing the insured property within reasonable time;

   (3) the limit of liability under this policy applicable to such property at the time of loss; or

   (4) the amount actually and necessarily expended in repairing or replacing such property or any part thereof.

   b. The Company shall not be liable for payment of loss on a replacement

---

* Honorable Alan B. Johnson, District Judge, United States District Court for the District of Wyoming, sitting by designation.

cost basis unless and until actual repair or replacement is completed.

Unless the time is extended by the Company in writing, loss to the property not repaired or replaced within one year after the loss will be settled on an actual cash value basis rather than on a replacement cost basis.

State Farm Policy No. 96–83–8571–2. The Property was not repaired or replaced within one year after the fire, allegedly because zoning and building ordinances adopted by the town of Mt. Crested Butte prior to the Property's destruction did not permit it to be rebuilt on its original foundation. State Farm's limit of liability under the Policy at the time of the fire was $450,000.

After the parties failed to reach an agreement as to the amount due to Mitchell and Cotten under the Policy, plaintiffs initiated this action against State Farm in the United States District Court for the Western District of Arkansas. This action was subsequently transferred to the federal district court for the District of Colorado pursuant to 28 U.S.C. § 1404(a).

In their complaint, plaintiffs alleged, among other things, that they were entitled to payment of $450,000, the maximum permitted under the Policy, rather than to the amount of the Property's actual cash value or replacement cost as stated in the Policy. In a March 31, 1988 motion for partial summary judgment on this issue, plaintiffs argued that this result was required by Arkansas' Valued Policy Statute, which states in pertinent part:

A fire insurance policy, in case of a total loss by fire of the property insured, shall be held and considered to be a liquidated demand and against the company taking the risk, for the full amount stated in the policy, or the full amount upon which the company charges, collects or receives a premium....

Ark.Code Ann. § 23–88–101 (1987) (formerly § 66–3901).

In a cross-motion for partial summary judgment filed soon thereafter, State Farm responded that Colorado rather than Arkansas law governed determination of the amount due under the Policy and, further,

that Colorado law required enforcement of the Policy as written and hence limited Mitchell and Cotten's recovery to the actual cash value of the Property. Both parties apparently agree that this value is approximately $200,000.

After a hearing, the district court granted plaintiffs' motion for partial summary judgment and denied State Farm's motion upon ruling that Arkansas law governs this action and requires State Farm to pay plaintiffs the $450,000 limit of liability under the Policy. Order of November 7, 1988. On May 4, 1989, the district court granted the parties' stipulated motion for certification for appeal of its interlocutory order pursuant to 28 U.S.C. § 1292(b). This appeal followed upon our grant of State Farm's petition for leave to appeal.

## Discussion

### A. Standard of Review

■ We review choice of law determinations *de novo*. *See Zipfel v. Halliburton Co.*, 832 F.2d 1477, 1482 (9th Cir.1987), *cert. denied*, 486 U.S. 1054, 108 S.Ct. 2819, 100 L.Ed.2d 921 (1988). Any findings of fact underlying such determinations are reviewed under the clearly erroneous standard. *Id.* We will affirm the district court's grant of partial summary judgment on the choice of law issue only if it is clear from the record that there are no genuine issues of material fact and that plaintiffs are entitled to judgment as a matter of law. *Willner v. Budig*, 848 F.2d 1032, 1033–34 (10th Cir.1988), *cert. denied*, —— U.S. ——, 109 S.Ct. 840, 102 L.Ed.2d 972 (1989).

### B. Choice of Law

The parties assert that either Arkansas or Colorado law governs determination of the amount due to plaintiffs under the terms of the Policy and the circumstances of this case. It is undisputed that the law of these two states are in conflict on this issue and that the parties have not effectively chosen which state's law applies. Accordingly, we must determine which state's law governs this dispute. *See Coldwell Banker & Co. v. Karlock*, 686 F.2d 596, 599–600 & n. 4 (7th Cir.1982). Be-

cause this diversity case was initiated in federal district court in Arkansas, Arkansas choice of law rules apply. *See Van Dusen v. Barrack,* 376 U.S. 612, 639, 84 S.Ct. 805, 820, 11 L.Ed.2d 945 (1964).

■ Arkansas generally applies the "most significant relationship" test to determine the applicable law in a conflicts situation. *See Standard Leasing Corp. v. Schmidt Aviation, Inc.,* 264 Ark. 851, 576 S.W.2d 181, 184 (1979); *Williams v. Carr,* 263 Ark. 326, 565 S.W.2d 400, 403–04 (1978); *Williams v. State Farm Mut. Auto. Ins. Co.,* 737 F.2d 741, 743 (8th Cir. 1984) (applying Arkansas law), *cert. denied,* 469 U.S. 1159, 105 S.Ct. 910, 83 L.Ed.2d 923 (1985); *Roofing & Sheet Metal Servs., Inc. v. La Quinta Motor Inns, Inc.,* 689 F.2d 982, 994 (11th Cir.1982) (summarizing Ark. law). This test, as stated in section 6 of the Restatement (Second) of Conflict of Laws (1971) (Restatement), requires consideration of the following general principles in determining the state law applicable to a particular issue:

    (a) the needs of the interstate and international systems,

    (b) the relevant policies of the forum,

    (c) the relevant policies of other interested states and the relative interests of those states in the determination of the particular issue,

    (d) the protection of justified expectations,

    (e) the basic policies underlying the particular field of law,

    (f) certainty, predictability and uniformity of result, and

    (g) ease in the determination and application of the law to be applied.

*Id.; see Williams v. Carr,* 565 S.W.2d at 404.

■ In a case such as this one, involving interpretation and enforcement of a contract that does not contain a choice of law provision

    the contacts to be taken into account in applying the principles of [the most significant relationship test] to determine the law applicable to an issue include:

    (a) the place of contracting,

    (b) the place of negotiation of the contract,

    (c) the place of performance,

    (d) the location of the subject matter of the contract, and

    (e) the domicil, residence, nationality, place of incorporation and place of business of the parties.

These contacts are to be evaluated according to their relative importance with respect to the particular issue.

Restatement § 188; *see Williams v. State Farm Mut. Auto. Ins. Co.,* 737 F.2d at 743 (applying § 188 contacts analysis under Arkansas law); *Roofing & Sheet Metal Servs.,* 689 F.2d at 994–95 (same).

As suggested above, a particular contact may play an especially important role in determining the state having the most significant relationship to issues arising out of certain kinds of contracts. For contracts of fire, surety or casualty insurance, that contact is "the principal location of the insured risk during the term of the policy." Restatement § 193. Thus, in jurisdictions following the "most significant relationship" test, the law of the state in which the insured property, object or other risk is located normally governs issues concerning the validity or effect of the insurance contract, *see id.; Industrial Indem. Ins. Co. v. United States,* 757 F.2d 982, 986 (9th Cir.1985); *Diamond Int'l Corp. v. Allstate Ins. Co.,* 712 F.2d 1498, 1501 (1st Cir.1983); *McAllaster v. Bruton,* 655 F.Supp. 1371, 1373 (D.Me.1987); *United States v. Aid Ins. Co.,* 642 F.Supp. 535, 537 (E.D.Mo. 1986), including "whether in the case of destruction or loss the insured's recovery will be limited to the actual value of the thing despite the fact that it was insured for a larger amount." Restatement § 193 comment a.

Although no Arkansas court has expressly adopted this rule in general or section 193 of the Restatement in particular, we agree with both the parties and the district court that the Arkansas Supreme Court would do so if given the opportunity. *See Roofing & Sheet Metal Servs.,* 689 F.2d at 994 (concluding, upon review of Arkansas case law, that the Arkansas Supreme Court

would apply "most significant relationship" test to breach of contract issue); *cf. Bank of Oak Grove v. Wilmot State Bank,* 279 Ark. 107, 648 S.W.2d 802, 804 (1983) (holding that Arkansas law applies to all transactions involving lands within the state). Accordingly, we hold that the choice of law principles stated in Restatement section 193 govern determination of the choice of law issue before this court.

In this case, the district court applied section 193 to hold, contrary to the general rule, that Arkansas had a more significant relationship to a determination of the plaintiffs' rights under the Policy than did Colorado, the location of the Property. As grounds therefor, the district court cited the plaintiffs' alleged expectation that the $450,000 policy limit was recoverable in case of total destruction of the Property, Arkansas' public policy, as evidenced by its Valued Policy Statute, that insureds be able to recover the full amount upon which they paid premiums and the fact that plaintiffs resided in Arkansas and negotiated and performed their obligations under the insurance contract there. Tr. at 32. In addition, the district court found that "the equities in this case strongly pointed to the application of the [more favorable] Arkansas law" because Mitchell and Cotten had paid premiums on a liability limit of $450,-000 and had allegedly been unable to replace or repair the Property due to changes in Mt. Crested Butte zoning ordinances.[1] *Id.* at 30–32. Overall, the court found that "other than the [State Farm] agent residing in Colorado … and the property being actually located here … it seems to me all other relationships and all other significant

tests would point to … the law of the state of Arkansas being applied in this case." *Id.* at 31.

■ We must disagree both with the district court's analysis and its conclusion. As the above discussion and vast majority of case law makes clear, the location of an insured property is not merely one factor to be balanced against others in determining the law governing the parties' rights under an insurance contract. Instead, it is the single most important factor in making this choice of law determination, *see, e.g.,* Restatement § 193; *Industrial Indem. Ins. Co.,* 757 F.2d at 986; *Diamond Int'l Corp.,* 712 F.2d at 1501–02; *McAllaster,* 655 F.Supp. at 1373; *Aid Ins. Co.,* 642 F.Supp. at 537, and, as the case law demonstrates, is almost invariably controlling.[2] Thus, absent some special circumstances or other factors distinguishing this case from those following the general rule, Colorado, as the state in which the Property is located, has the most significant relationship to issues arising out of the Policy and its law will govern this action.

Neither the record nor the district court's stated rationale in choosing Arkansas law justify a departure from the general rule in this case. There is no evidence in the record, for example, that the parties to this action either chose or expected, justifiably or otherwise, Arkansas law to govern issues arising under the Policy. In the absence of such evidence, it can generally be assumed that the parties, if they thought about the choice of law issue at all, expected Colorado law, as the law of the state in which the Property was located, to be applicable. *See* Restatement § 193 comment c.

1. It appears from the record before us that there was some dispute as to whether Mitchell and Cotten were precluded from rebuilding the Property or only from rebuilding on the original foundation. Because we reverse the district court's grant of partial summary judgment on other grounds, we need not address this question or any implications it might have for the plaintiffs' recovery under the Policy.

2. In fact, plaintiffs have found but a single case, *Coffin v. London & Edinburgh Ins. Co.,* 27 F.2d 616 (N.D.Ga.1928), in which a court applied some law other than that of the state in which an insured property was continually located to

determine the parties' rights under an insurance contract. In that case, the district court chose to apply the second state's law because application of the law of the state of location would have invalidated the insurance contract and thus defeated the expectations of both parties that a valid contract existed. *Id.* at 617–18. In this case, application of Arkansas law rather than the law of the state in which the Property is located would have the opposite effect because it would invalidate the liability clause of what otherwise appears to be a valid and binding contract. Thus, *Coffin* is readily distinguishable from this case.

The fact that Arkansas law looks more favorably on plaintiffs' claim, and that plaintiffs would thus benefit from its application in this case, is also not determinative of which state has the most significant relationship to the recovery issue. *See Dorr v. Briggs*, 709 F.Supp. 1005, 1007 (D.Colo.1989) (applying most significant relationship test to choose state law that potentially limited plaintiffs' recovery); *Grand Sheet Metal Prods. Co. v. Aetna Casualty & Sur. Co.*, 500 F.Supp. 904, 908–09 (D.Conn.1980) (same). Finally, the fact that the insureds were Arkansas residents, and hence paid premiums and otherwise acted on the Policy from that base, is certainly not sufficient to overcome Colorado's interest in applying its law to an insurance contract on property located within its borders.

Accordingly, the district court's holding that Arkansas law governs determination of the amount of plaintiffs' recovery under the Policy is REVERSED, as is its order granting partial summary judgment to plaintiffs. Because there are no material issues of fact remaining and we have determined that State Farm is entitled as a matter of law to have Colorado law applied to the contract issues raised in this action, we also enter partial summary judgment for State Farm on this choice of law issue. We do not, however, consider or decide whether Colorado law limits plaintiffs' recovery under the Policy to the actual cash value of the Property as argued by State Farm in the district court below, but rather, consistent with the parties' stipulated motion certifying this appeal, remand this issue to the district court for determination.

This matter is hereby REVERSED and REMANDED to the district court for further proceedings consistent with this decision and the district court's May 4, 1989, order certifying this appeal.