Richard MITCHELL and Larry Cotten, Plaintiffs–Appellees,

v.

STATE FARM FIRE AND CASUALTY COMPANY, Defendant–Appellant.

No. 92–1208.

United States Court of Appeals, Tenth Circuit.

Feb. 1, 1994.

Rehearing and Suggestion for Rehearing En Banc Denied April 12, 1994.*

Miles C. Cortez, Jr. (Stephen J. Hensen and Fermin G. Montoya of Cortez Friedman, P.C., with him on the brief), Denver, Colorado, for plaintiffs-appellees.

Alan Epstein of Hall & Evans (William J. Hunsaker of Makris, Hunsaker, Towey & Melonakis, P.A., with him on the brief), Denver, Colorado, for defendant-appellant.

Before LOGAN, Circuit Judge, FEINBERG, Senior Circuit Judge,** and McWILLIAMS, Senior Circuit Judge.

McWILLIAMS, Senior Circuit Judge.

This controversy has its genesis in a fire occurring on May 27, 1985, which totally destroyed a condominium located in Mt. Crested Butte, Colorado. At the time of the fire, the condominium was owned by Richard Mitchell and Larry Cotten ("Mitchell and Cotten"), and State Farm Fire and Casualty Company ("State Farm") had previously issued Mitchell and Cotten an insurance policy on the condominium for fire and extended coverage. A dispute between the insureds and the insurer thereafter arose, resulting in the present litigation.

On July 10, 1986, Mitchell and Cotten, both residents of Arkansas, along with their lender, the First National Bank of Fort Smith, Arkansas ("Bank"), brought an action in the United States District Court for the Western District of Arkansas against State Farm, an Illinois corporation qualified to do business in Colorado. Jurisdiction was based on diversity of citizenship. 28 U.S.C. § 1332(a)(1) (1993). Pursuant to 28 U.S.C. § 1404(a) (1993), the case was subsequently transferred to the United States District Court for the District of Colorado.

One of the plaintiffs' claims was for breach of an insurance contract.[1] The policy limits

---

* Editor's Note: The court's April 12, 1994 opinion on petition for rehearing en banc to be published. See 1994 WL 123094.

** Honorable Wilfred Feinberg, Senior Circuit Judge for the Second Circuit, sitting by designation.

1. In their amended complaint the plaintiffs asserted six claims for relief, i.e. breach of duty of good faith and fair dealing, breach of contract, breach of fiduciary duties, consumer fraud, intentional infliction of emotional distress, and unfair and deceptive acts of practices in business,

of the insurance policy at the time of the fire was $450,000, and plaintiffs sought judgment in that amount. By answer, State Farm denied that it was obligated to the plaintiffs in the sum of $450,000 for breach of contract, and alleged that under the terms of the policy it was only obligated to the plaintiffs for the actual cash value of the property at the time of the fire, which was less than $200,000.

Both sides moved for summary judgment on plaintiffs' breach of contract claim. In support of their motion for summary judgment, the plaintiffs argued that their breach of contract claim was governed by Arkansas law and that an Arkansas statute, Ark.Code Ann. § 66–3901 (Michie 1959) (now Ark.Code Ann. § 23–88–101(a) (Michie 1987)), referred to by the parties as a "valued policy" statute, provided as follows:

> A fire insurance policy, in case of a total loss by fire of the property insured, shall be held and considered to be a liquidated demand and against the company taking such risk, for the full amount stated in such policy, or the full amount upon which the company charges, collects or receives a premium.

In support of its motion for summary judgment, State Farm argued that Colorado law—not Arkansas law—was controlling, and that Colorado, unlike Arkansas, did not have a so-called "valued policy" statute, and, accordingly, the actual cash value provisions in the insurance contract controlled.

After a hearing, the district court granted plaintiffs' motion for partial summary judgment and denied State Farm's motion, holding that the Arkansas statute governed. Therefore, the court found that under the "valued policy" statute of Arkansas, State Farm was obligated to pay plaintiffs the policy limits, namely $450,000.

On interlocutory appeal, we reversed the district court in *Mitchell v. State Farm Fire & Casualty Co.*, 902 F.2d 790 (10th Cir.1990) (*"Mitchell I"*). In reversing, we held that Arkansas' "choice of law" rules would dictate that Colorado law should apply since the insured property was located in Colorado.

In so doing, we held that although State Farm was correct on the choice of law issue, we were not then considering, or deciding, whether under Colorado law plaintiffs were limited in their recovery to the actual cash value of the property at the time of the fire. As indicated, plaintiffs in the district court had asserted other and separate claims for relief against State Farm, but in *Mitchell I* we were only concerned with their claim based on the alleged breach of the insurance contract.

After remand, the case eventually came on for trial. As indicated, in their amended complaint the plaintiffs had asserted six claims for relief, two of which were submitted to the jury. The claims submitted to the jury were: (1) breach of the insurance contract and (2) breach of the duty of State Farm to deal in good faith and in fair dealing with the plaintiffs, the breach relied on by plaintiffs being the "delay" on the part of State Farm in payment of the benefits due under the policy, which, under plaintiffs' theory of the case, was $450,000.

The jury returned a verdict in favor of State Farm on the breach of contract claim. However, as concerns plaintiffs' breach of duty claim, the jury returned a verdict in favor of the plaintiffs and against State Farm in the amount of $256,000. Judgment was thereafter entered in favor of the plaintiffs against State Farm in the amount of $256,-000. The jury also returned a verdict in favor of the plaintiffs against State Farm in the amount of $10,000 as exemplary damages.

In post trial proceedings, the district judge also allowed plaintiffs $134,826.37 as prejudgment interest and awarded plaintiffs attorneys' fees in the sum of $79,978. State Farm appeals the judgment thus entered. Plaintiffs have not appealed the judgment in favor of State Farm on their breach of contract claim. Accordingly, the jury's verdict in favor of State Farm on plaintiffs' breach of contract claim becomes the law of the case. *Mason v. Texaco, Inc.*, 948 F.2d 1546, 1553 (10th Cir.1991), *cert. denied,* —— U.S. ——, 112 S.Ct. 1941, 118 L.Ed.2d 547 (1992).

and sought judgment for $450,000 as "actual contract damages," as well as punitive damages.

A brief recital of the background facts will place the present controversy in better focus. On December 7, 1981, Mitchell and Cotten purchased a four-unit condominium complex (the subject property) located in Mt. Crested Butte, Colorado, from Yale and Kathleen Pokress for $255,000, the plaintiffs, *inter alia*, executing a promissory note in favor of the Pokress family in the amount of $130,000. At the time of the sale, the subject property was insured by the Pokress family with State Farm for $278,300. On December 7, 1981, State Farm consented to an assignment of the insurance policy from the Pokress family to the plaintiffs.

On May 27, 1982, the plaintiffs obtained a $385,000 line of credit from the Bank to draw against as needed to pay operating expenses, interest payments and eventually remodelling expenses on the subject property. The loan from the Bank was secured by a second deed of trust on the subject property, the plaintiffs having executed a first deed of trust in favor of the Pokress family in connection with the purchase of the property. The Bank required the plaintiffs to increase the policy limits of the policy of insurance whenever the loan balance exceeded the insurance coverage. Accordingly, State Farm, at the request of the plaintiffs, increased the policy limits on the subject property to $300,000 on January 18, 1983, and such was further increased to $450,000 in October, 1984.

As above stated, the subject property was totally destroyed by fire on May 27, 1985. At the time the subject property was security for the plaintiffs' then indebtedness to the Pokress family in the amount of $103,250 and to the Bank in the sum of $384,690.09, making a total indebtedness in the amount of $480,940.09.

As indicated, it was plaintiffs' theory of the case that under the policy State Farm was obligated to pay plaintiffs $450,000. In contrast, State Farm's position was that, under the provisions of the policy if the subject property was totally destroyed by fire, it was only obligated to pay the "full cost of replacement." Furthermore, State Farm argued

that if the property was not replaced within one year after the loss, which it was not, then State Farm was only obligated to pay the actual cash value of the subject property, which was considerably less than $450,000.

Laying aside, for the moment, the difference between the parties as to the amount due under the policy, investigation by authorities immediately after the fire disclosed that the fire was the result of arson. Accordingly, without going into great detail, State Farm refused to make any payment under the policy until it could determine if the plaintiffs were involved in the arson.

State Farm eventually concluded that it could *not* prove that the plaintiffs were connected with the intentional burning of the subject property, although, for whatever it is worth, it continued to believe that they had. In any event, on October 25, 1985, some five months after the fire, State Farm paid the Pokress family $113,164.18, which sum represented the plaintiffs' indebtedness to the Pokress family. In discharging plaintiffs' indebtedness to the Pokress family, State Farm took an assignment of the first deed of trust from Pokress.

During the pendency of *Mitchell I*, State Farm and the Bank entered into an agreement that if we reversed the district court, which we did, they would resolve their dispute through binding arbitration. Plaintiffs were not parties to this agreement. Accordingly, on April 30, 1991, nearly six years after the fire, the arbitrators, after hearing, entered an award in favor of the Bank in the sum of $73,268, which sum represented the actual cash value of the property, less amounts paid by State Farm to the Pokress family, rather than payments up to the policy limit of $450,000, which the plaintiffs had demanded.[2] After State Farm satisfied the award to the Bank, under State Farm's theory of the case, nothing remained due and owing the plaintiffs. After the Bank received payment from State Farm, it withdrew from the case.

**2.** The arbitrators determined, *inter alia*, that the actual cash value of the building at the time of the loss, exclusive of the land value, was $172,-

000.00. In addition, there was an estimated personal property loss of $5,055.00.

As noted, the jury returned a verdict in favor of State Farm on plaintiffs' breach of contract claim, thereby adopting State Farm's position that its obligation under the contract was controlled by the provision that if the property was not replaced within one year it was only obligated to pay the actual cash value of the subject property as of the date of the fire, not the policy limit of $450,000.[3]

As stated, the jury returned a verdict in favor of the plaintiffs on their claim for breach of the duty of good faith and fair dealing in the sum of $256,000. The "duty" which plaintiffs relied on was the duty "not to delay payments due under the policy." That there was delay is admitted by State Farm, but it is State Farm's position that any delay was, under the circumstances, reasonable. It is plaintiffs' position that the delay was unreasonable.

■ On appeal, State Farm urges several grounds for reversal, one of which is that the jury's verdict on plaintiffs' breach of duty claim is inconsistent with its verdict on plaintiffs' breach of contract claim. As a result, State Farm contends that the verdict awarding plaintiffs the sum of $256,000 on their breach of duty claim should be vacated and a new trial ordered on that claim.

■ Colorado has recognized the tort of bad faith breach of an insurance contract, as distinguished from an action sounding in contract for breach of the contract itself. *Travelers Ins. Co. v. Savio,* 706 P.2d 1258 (Colo. 1985) (en banc); *Farmers Group, Inc. v. Trimble,* 691 P.2d 1138 (Colo.1984) (en banc). Accordingly, a judgment in favor of the insurer on a breach of contract claim does not necessarily foreclose recovery by an insured for damages caused by an insurer's bad faith delay of payments due under the policy.

However, notwithstanding our recognition of the distinction between a breach of contract action and an action sounding in tort for breach of the duty of good faith and fair dealing, we firmly believe the jury verdicts in this case are in conflict. The inconsistency we perceive in the instant case is that the jury founds for State Farm on plaintiffs' claim for breach of contract, and then awarded plaintiffs $256,000 on their breach of duty claim. As both parties indicate, this can only be explained on the basis that in awarding plaintiffs $256,000 on their breach of duty claim the jury approximated the difference between the policy limit, $450,000, and the amounts paid by State Farm to the Pokress family and the Bank. However, by its verdict on plaintiffs' breach of contract claim, the jury at the same time found that State Farm had fulfilled its contractual obligation under the policy by its payments to the Pokress family and the Bank, and not only did *not owe* plaintiffs $450,000, but did not owe plaintiffs any amount. In other words, the jury by its verdict on plaintiffs' breach of contract claim found that State Farm did *not* owe plaintiffs $450,000, or any lesser sum, having discharged its contractual duty under the policy by its payments to the Pokress family and the Bank, and then, in the next breath, so to speak, found, in effect, that the measure of damage for plaintiffs' breach of duty claim approximated the difference between $450,000 and the amount paid by State Farm to the Pokress family and the Bank. We cannot "fairly harmonize" the two.[4] Evidence of other damage suffered by plaintiffs because of State Farm's delay in making payments to the Pokress family or the Bank was minimal.

Because of what we perceive to be an irreconcilable inconsistency between the jury's verdict on plaintiffs' breach of contract

3. Apparently, at trial plaintiffs attempted to show that the written policy of insurance was changed or amended by an oral agreement between plaintiffs and a representative of State Farm wherein the policy limits were raised to $450,000, and that State Farm was obligated to pay that amount. In this regard, the jury was instructed that "[a] written contract may be changed or amended by oral agreement with the consent of all parties to the contract." The jury, by its verdict on the breach of contract claim, found that after crediting State Farm with the amounts paid to the Pokress family and the Bank, State Farm had discharged its obligation under the policy to the plaintiffs, and that it was not obligated to pay the policy limit, i.e. $450,000.

4. A reviewing court will find jury verdicts inconsistent when it cannot "fairly harmonize" them. *Delano v. Kitch,* 663 F.2d 990, 999 (10th Cir. 1981).

claim and its verdict on plaintiffs' breach of duty claim sounding in tort, the judgment in favor of plaintiffs on their breach of duty claim, including the judgment for punitive damages, prejudgment interest and attorney's fees, is vacated and the matter remanded for further proceedings on the breach of duty claim. As indicated, there was no appeal on that part of the judgment in favor of State Farm on plaintiffs' breach of contract claim. And such now stands as the law of the case.