2012 Ark. App. 257

**BUCKEYE RETIREMENT CO., LLC., LTD, Appellant**

v.

**Shannell WALTER, Appellee.**

No. CA 11–1002.

Court of Appeals of Arkansas.

April 18, 2012.

Matthew B. Finch, Danielle M. White-house, Gill Elrod Ragon Owen & Sherman, P.A., Little Rock, for Appellant.

Stephen R. Lancaster, Regina A. Young, Gary D. Marts, Jr., Wright, Lindsey & Jennings LLP, Little Rock, for Appellee.

LARRY D. VAUGHT, Chief Judge.

Appellant Buckeye Retirement Co., LLC., LTD appeals the order of the Pulaski County Circuit Court directing a verdict to appellee Shannell Walter and dismissing Buckeye's foreclosure complaint with prejudice. On appeal, Buckeye argues that the order should be reversed because (1) the trial court erred as a matter of law in finding that a redemption deed issued by the Arkansas Commissioner of State Lands eliminated Buckeye's judgment lien, and (2) Buckeye presented a prima facie case that Walter had notice of its judgment lien. While Buckeye's first point has merit, we nevertheless affirm the trial court's order because, as a matter of law, Buckeye's judgment lien never attached to Walter's property.

On September 26, 2002, a judgment in the amount of $290,359.05 plus interest was entered in the Pulaski County Circuit

Court in favor of Bank of America against Sammie Jackson and Independent Investment Management Group, Inc. (IIMG). The judgment was assigned to Buckeye on November 19, 2002, and filed with the clerk's office on December 17, 2002.

On July 15, 2009, Buckeye filed a complaint, seeking to foreclose its judgment lien[1] on a tract of real estate located at Lot 13, Normanwood Subdivision to the City of Little Rock, Pulaski County, Arkansas (the property). The foreclosure complaint named Sammie Jackson, d/b/a Independent Investment Management, Inc. (IIM),[2] and IIMG as defendants and alleged that because they failed to pay the judgment, Buckeye was entitled to foreclose on the property that Buckeye claimed the judgment debtors owned. Walter was also named as a defendant in the foreclosure action because she was the current owner of the property.[3] The chain of title relating to the property is as follows:

November 22, 1999 Warranty Deed from Anita Ziegler to IIM

January 6, 2005 Quitclaim Deed from Anita Ziegler to Angela Jackson[4]

January 20, 2005 Redemption Deed[5] issued by Mark Wilcox, Commissioner of State Lands for the State of Arkansas, to Angela Jackson

February 7, 2005 Quitclaim Deed from IIM to Sherkeyer Rena Whittington (this deed was signed by Sammie Jackson as president and secretary of IIM)

February 7, 2005 Warranty Deed from Angela Jackson to Sherkeyer Rena Whittington

April 4, 2007 Warranty Deed from Sherkeyer Rena Whittington to Shannell Walter

At trial, the above documents were admitted into evidence along with a Certifi-

---

1. Arkansas Code Annotated section 16–65–117, entitled "Judgment as lien on land," provides:

 (a)(1)(A) A judgment in the ... circuit courts of this state ... shall be a lien on the real estate owned by the defendant in the county in which the judgment was rendered from the date of its rendition only if the clerk of the court which rendered the judgment maintains a permanent office within the county, at which office permanent records of the judgments of the court are continuously kept and maintained, and the judgment has been filed with the circuit clerk....
 (B) As to any person who does not have actual notice of the rendition of the judgment, the judgment shall be a lien from the date the judgment is recorded and indexed by the court clerk in a manner that provides reasonable notice to the public.
 Ark.Code Ann. § 16–65–117(a)(1)(A), (B) (Supp.2011).

2. There is no evidence in the record before us establishing that IIM and IIMG are the same entity.

3. The foreclosure complaint named several other defendants, Raymond Douglas and Helen Joy Vann; Bank of America, N.A.; Forest Park Medical Clinic, P.A. and Cambridge Rehabilitation Center, Inc.; Rebsamen Medical Center; Arkansas Children's Hospital; and Rescomm Holdings No. 2, LLC. Arkansas Children's Hospital was dismissed by court order filed August 8, 2009. Buckeye, in its notice of appeal, abandoned any pending but unresolved claims against the remaining defendants (including Sammie Jackson, d/b/a IIM, and IIMG), which operated as a dismissal with prejudice pursuant to Arkansas Rule of Appellate Procedure—Civil 3(e)(vi) (2011).

4. There is no evidence in the record that Sammie Jackson and Angela Jackson are related. The only evidence of a connection between the two individuals is that they share the same last name.

5. There is no evidence in the record explaining when the tax lien was filed or whom it was filed against.

cate of No Record for IIM[6] issued by the Arkansas Secretary of State; a Certificate of Status for IIMG[7] issued by the Arkansas Secretary of State; and a commitment for title insurance—that did not include an exception for Buckeye's judgment—issued to Walter by Stewart Title Guaranty Company.

Buckeye offered testimony of two witnesses at trial. The first was Lucenia Whitehead, the president and manager of Grand Prairie Title Company. Whitehead testified that she did not perform the title search and/or closing in the case at bar, but that she had been in the title-company business for forty-five years and had conducted thousands of title searches and closings. Focusing on the 1999 warranty deed in which Ziegler purportedly granted title to the property to IIM, Whitehead said that it would have been standard title-search practice to confirm the status of IIM with the Arkansas Secretary of State. If IIM's corporate status had been checked, it would have been disclosed that IIM was not and had never been a registered Arkansas corporation. Because IIM was not in good corporate standing, Whitehead testified that the title company should have performed further research, which would have led to the discovery of Buckeye's judgment lien on the property that Walter sought to purchase.

Buckeye's second witness was Denise Harkless, an account officer for Buckeye. She testified that Buckeye was seeking to foreclose on the judgment lien on the property because there was $416,954.63 due on the judgment owed by Sammie Jackson and IIMG.

At the conclusion of Buckeye's case-in-chief, Walter moved for a directed verdict, arguing that Buckeye failed to present evidence that Sammie Jackson or IIMG owned the property; thus, its judgment lien did not attach to it. Walter pointed out that the judgment was against Sammie Jackson and IIMG, and the chain of title in this case did not establish that IIMG or Sammie Jackson owned the property. Alternatively, Walter argued that Buckeye failed to present evidence that Walter had actual or constructive notice of Buckeye's judgment and that Buckeye's claim was barred by laches.[8] The trial court granted Walter's motion for directed verdict but on different grounds—that the redemption deed issued by the State in 2005 eliminated Buckeye's judgment lien. An order of dismissal with prejudice was entered by the trial court on June 27, 2011. Buckeye filed a timely appeal from that order.

We have previously set forth the standard of review when the grant of a motion for directed verdict or motion to dismiss is involved:

> In determining whether a directed verdict should have been granted, we review the evidence in the light most favorable to the party against whom the

---

**6.** The Certificate of No Record issued for IIM certified that "a diligent search of the records of [the Secretary of State's Office] reveals no record of a domestic or foreign corporation, professional corporation, professional association, limited partnership, limited liability company on file in this office with the name [IIM]."

**7.** The Certificate of Status issued for IIMG confirmed that IIMG filed articles of incorporation in the Secretary of State's Office on January 26, 1996, authorizing it to transact business in Arkansas as a for-profit corporation. This certificate reflected that IIMG's corporate status had been revoked and reinstated multiple times and was currently revoked. ·

**8.** More specifically, Walter argued that laches precluded Buckeye's claim because Buckeye, which was assigned the judgment in 2002, did not pursue the judgment until 2009, after the property had been transferred several times.

verdict is sought and give it its highest probative value, taking into account all reasonable inferences deducible from it. A motion for directed verdict should be granted only if there is no substantial evidence to support a jury verdict. Where the evidence is such that fair-minded persons might reach different conclusions, then a jury question is presented, and the directed verdict should be reversed.

*Woodall v. Chuck Dory Auto Sales, Inc.,* 347 Ark. 260, 264, 61 S.W.3d 835, 838 (2001) (citing *Morehart v. Dillard Dep't Stores,* 322 Ark. 290, 292, 908 S.W.2d 331, 333 (1995)). We have further said that a trial court's duty is to review a motion for directed verdict or dismissal at the conclusion of a plaintiff's case by deciding whether, if it were a jury trial, the evidence would be sufficient to present to the jury. *Woodall,* 347 Ark. at 264, 61 S.W.3d at 838. In making that determination, the trial court does not exercise fact-finding powers that involve determining questions of credibility. *Id.,* 61 S.W.3d at 838.

At trial, Walter did not move for a directed verdict based on the legal effect of the redemption deed. Nevertheless, the trial court based its decision to grant the motion on that ground,[9] finding that when the State issued the redemption deed to Angela Jackson in January 2005, prior defects or encumbrances in the title (including Buckeye's judgment lien) were extinguished. Buckeye contends that the trial

court erred as a matter of law.[10] We agree.

Our supreme court has held that a redemption deed from the State is in effect a mere payment of taxes and does not purport to convey any title. *Gott v. Moore,* 218 Ark. 800, 802, 238 S.W.2d 754, 756 (1951); *Mabrey v. Millman,* 208 Ark. 289, 292, 186 S.W.2d 28, 30 (1945).

> The effect of a redemption from the state of land forfeited for delinquent taxes is not to vest in the person making redemption the title which the state obtained by virtue of the delinquent tax sale, but merely to extinguish any right or lien of the state growing out of the said delinquent tax sale proceedings. Nor does the fact that the Commissioner of State Lands permits a redemption of lands sold to the state for non-payment of taxes establish that the person redeeming the land is the owner thereof.

*Chavis v. Taylor & Co.,* 211 Ark. 252, 254–55, 200 S.W.2d 507, 508 (1947). In *Meyer v. Snell,* 89 Ark. 298, 300, 116 S.W. 208, 209 (1909), our supreme court further stated:

> Nor can we sustain appellee's contention that the state's redemption deed to him established the fact that he was the true owner of the land. The most that can be said of this is that the action of the Commissioner of State Lands in allowing him to redeem and executing a deed to him establishes merely his right to redeem from the tax sale; but it cannot

---

9. During directed-verdict arguments, the trial court stated that once the property is "forfeited to the State; and if you buy it back out of the State, I think you buy it free and clear." At the conclusion of directed-verdict arguments, the trial court stated, "I have a real problem, from an honest to goodness title perspective, with that redemption deed from the State. It's—normally, those are kind of like a legal sorbet; they kind of clean out everything that went before. I mean, that's the whole purpose of getting it from the State.

The State gets to give those out." Finally, the trial court, in its order granting Walter's motion for directed verdict, found that the redemption deed issued by the Commissioner of State Lands in the chain of title of the property in question "cleaned out everything that went before" it.

10. We note that Walter fails to respond to this argument in her brief on appeal.

be held to be an adjudication of his ownership of the land in litigation with another person.

Further, when the title to land is forfeited to the state for nonpayment of taxes, the state holds the title solely for the payment of the taxes charged and chargeable thereon. 72 Am.Jur.2d. *State & Local Taxation* § 907 (2001). Upon redemption, the redemptioner does not get the state's title; rather, the state's title is extinguished by the redemption and the redemptioner gets the title existing prior to the state's title, subject to any encumbrances or liens existing at that time. *Id.* Accordingly, we hold that the trial court erred as a matter of law in finding that the redemption deed eliminated Buckeye's judgment lien. However, we affirm the trial court's order of dismissal for other reasons.

■ At trial, Buckeye urged the court to find that Walter (through her title company) had or should have had notice of Buckeye's judgment lien on the property. Buckeye pointed to evidence from Whitehead that Walter's title agent, performing a standard property-title search, should have discovered Buckeye's judgment lien. Buckeye continues to make this argument on appeal. However, Buckeye's argument at trial was met with Walter's primary argument in support of a directed verdict—that the issue of notice was irrelevant because there was no proof that at any time IIMG or Sammie Jackson owned the property; therefore, Buckeye's judgment lien never attached to it.

The applicable judgment-lien statute provides that a judgment in the circuit courts of Arkansas shall be a lien on the real estate *owned by the defendant* in the county in which the judgment was rendered. Ark.Code Ann. § 16–65–117(a)(1)(A) (emphasis added). Buckeye's witness, Whitehead, testified that in Arkansas a judgment is a lien on land only if the land is owned by the judgment debtor. In this case, there is no evidence that the judgment debtors, IIMG and/or Sammie Jackson, owned the property.

Buckeye did not present any testimony that IIMG or Sammie Jackson owned the property. In fact, Whitehead said that she did not have any first-hand knowledge as to who actually owned the property. She specifically stated that she was not offering testimony that IIMG or Sammie Jackson owned the property. As for the documentary evidence, the undisputed facts in this case established that neither IIMG nor Sammie Jackson was named in the chain of title as grantor or grantee. While IIM is named in the chain of title, any attempt by Buckeye to link IIM to IIMG fails because both of the deeds involving IIM are void and invalid.

■ The requisites of a deed are that there be persons able to contract with for the purpose intended by the deed, so that in every grant there must be a grantee, a grantor, and thing to be granted. *Lael v. Crook*, 192 Ark. 1115, 1121, 97 S.W.2d 436, 439 (1936). It is essential that the grantee be a person, natural or artificial, capable of taking a title at the time of the conveyance. *Id.*, 97 S.W.2d at 439. In other words, Arkansas law requires that in conveyances of real property the grantee must be a legal entity, so that title can vest in an individual, partnership, or a corporation. *Bank of Oak Grove v. Wilmot State Bank*, 279 Ark. 107, 109–10, 648 S.W.2d 802, 803 (1983) (affirming an order finding a mortgage void where the mortgagee was "any future holder," which was not a legal entity capable of holding title to land). *See also N. Little Rock Hunting Club v. Toon*, 259 Ark. 784, 792, 536 S.W.2d 709, 713 (1976) (holding that an unincorporated association could not acquire and hold title in the form of a lease to real property in Arkansas as a matter of law); *Lael*, 192

Ark. at 1121–22, 97 S.W.2d at 439 (holding that a deed to an unincorporated entity was invalid, as there was no legal capacity by the grantees to take or hold title to real property).

In 1999 when Ziegler gave a warranty deed to IIM, IIM was not a legal entity; thus, that deed was void and invalid—no property was transferred. Accordingly, in 2005 when IIM gave a quitclaim deed to Whittington, IIM had no property to transfer; likewise, that deed was also void. Therefore, assuming arguendo that IIMG and/or Sammie Jackson had been linked to IIM, because both deeds involving IIM were void, the property was not transferred to the judgment debtors, and Buckeye's judgment lien never attached to it.[11] Therefore, a directed verdict was appropriate in this case, and we will affirm the trial court when it reaches the right result even if it announced the wrong reason. *Delgado v. Delgado*, 2012 Ark. App. 100, at 5, 389 S.W.3d 52, 56–57.

 Buckeye insists that the 1999 deed from Ziegler to IIM is not invalid. It contends that IIM's 2005 quitclaim deed, which Sammie Jackson signed as secretary and president of IIM, established him as a principal of IIM. And while conceding the fact that IIM was not incorporated and could not hold title to real property, Buckeye argues that the 1999 warranty deed from Ziegler to the unincorporated IIM effectively transferred the property to Sammie Jackson as IIM's principal. Buckeye's only support for this proposition is Arkansas Code Annotated section 4–27–

204 (Repl.2001), which provides that "[a]ll persons purporting to act as or on behalf of a corporation, knowing there was no incorporation under this chapter, are jointly and severally liable for all liabilities created while so acting." This statute merely addresses the *liabilities* of people acting on behalf of corporations that they know do not exist. It does not address the transfer of real property to people purporting to act on behalf of a corporation, while knowing that the corporation does not exist. Therefore, section 4–27–204 fails to support Buckeye's position. We will not consider an argument if the appellant has failed to cite to any convincing legal authority in support of it. *Walters v. Dobbins*, 2010 Ark. 260, at 6–7, 370 S.W.3d 209, 212–213.

In sum, while the trial court erred in granting a directed verdict based on the redemption deed, we affirm the trial court's decision because IIMG and Sammie Jackson did not own the property, and as a matter of law, Buckeye's judgment lien did not attach to the property that is now owned by Walter.

Affirmed.

HART and ROBBINS, JJ., agree.

---

11. Because of this holding, we do not reach the merits of Buckeye's notice argument. If the judgment debtors never owned the property, then there was no notice to give.