SHAWN A. WOMACK, Associate Justice
The Arkansas Department of Human Services (DHS) appeals the circuit court's order holding the agency in contempt and the temporary restraining order enjoining its emergency rule. The primary question before us is whether the agency violated the express terms of the circuit court's preliminary injunction order by promulgating the emergency rule. We hold that it did not and therefore reverse the order of contempt. We further dismiss DHS's appeal of the temporary restraining order as moot.
I.
A recitation of the factual history underlying this appeal can be found in our first review of the case. See Ark. Dep't of Human Servs. v. Ledgerwood , 2017 Ark. 308, 530 S.W.3d 336 ( Ledgerwood I ). In Ledgerwood I , we upheld the circuit court's temporary restraining order enjoining the 2015 ARChoices Medicaid waiver rule as applied to the named Plaintiffs-Appellees. On remand, the circuit court entered a permanent injunction against the program in its entirety. DHS was permanently enjoined from using the methodology embraced by that rule "unless or until it was properly promulgated." Days after the circuit court entered that order, DHS promulgated an emergency rule utilizing the same methodology. The circuit court entered a temporary restraining order against the rule and held DHS in contempt of its permanent injunction order. The primary basis for both orders was DHS's failure to provide notice and an opportunity for public comment during the adoption of the emergency rule. This appeal ensued.
II.
DHS contends it did not violate the express terms of the permanent injunction order when adopting the emergency rule. It therefore seeks reversal of the circuit court's order holding the agency in contempt. Because we conclude the rule was properly promulgated under the Administrative Procedure Act's (APA) emergency rulemaking provision, we find DHS did not violate the express terms of the circuit court's order. We reverse the order of contempt.
As a threshold matter, we must first determine the character of the contempt order. Contempt may be criminal or civil in nature. See Johnson v. Johnson , 343 Ark. 186, 197, 33 S.W.3d 492, 499 (2000). Criminal contempt seeks to preserve the power of the court, vindicate its dignity, and punish those who disobey its orders. Id. Civil contempt, on the other hand, is designed to protect the rights of private parties by compelling compliance with orders of the court made for the benefit of those parties. See Ivy v. Keith , 351 Ark. 269, 280, 92 S.W.3d 671, 677 (2002).
While the line between civil and criminal contempt may blur at times, the *914 critical distinction lies in the character of relief ordered by the court: "[C]riminal contempt punishes while civil contempt coerces. " Id. (internal quotation omitted) (emphasis in original). In other words, civil contempt seeks only "to coerce compliance with the court's order." Id. , 92 S.W.3d at 678. It carries with it a conditional penalty that may be purged once the civil contemnor complies with the underlying order. Id. Criminal contempt, by contrast, carries an unconditional penalty that is punitive in nature and cannot be purged. Id.
The circuit court did not state whether it was holding DHS in civil or criminal contempt. The record, however, reveals that the circuit court sought to punish DHS's "willful defiance" of its permanent injunction order by imposing a number of sanctions upon the agency. The contempt order required DHS to publish monthly updates relating to assessments of beneficiaries under the ARChoices program. The agency has been required to provide this information on its website and to opposing counsel. It has also been required to provide opposing counsel with monthly updates revealing the identities of persons who have not been reassessed under the program. DHS was not provided any avenue to purge itself of these sanctions; instead, they were to continue indefinitely until the circuit court ordered otherwise. Moreover, the circuit court referred DHS's counsel of record, as well as an agency attorney involved with the emergency rulemaking, to the Committee for Professional Conduct. The unconditional, unpurgeable penalties indicate that DHS was held in criminal contempt.
The standard of review in a case of criminal contempt is well settled: we view the record in the light most favorable to the circuit court's decision and sustain that decision if it is supported by substantial evidence. See James v. Pulaski County Circuit Court , 2014 Ark. 305, at 4, 439 S.W.3d 19, 23. Substantial evidence is that of sufficient force and character to compel a conclusion one way or another, forcing the mind to pass beyond suspicion or conjecture. Id. Where one is held in contempt for failure or refusal to abide by the circuit court's order, we will not look behind the order to determine its validity. Id.
There is no question that willful disobedience of a valid court order is contumacious conduct. See, e.g. , Johnson , 343 Ark. at 198, 33 S.W.3d at 499. But before one can be held in contempt for violating a court order, the order must be definite in its terms, clear as to the duties it imposes, and its commands must be express rather than implied. Id. When a party does all that is expressly required under an order, it is error to hold it in contempt. Id.
The underlying permanent injunction order expressly barred DHS "from using RUGs methodology unless or until it is properly promulgated." DHS subsequently adopted an emergency rule that utilized the methodology under the process established by the APA. The circuit court held DHS in contempt for violating its permanent injunction order because the agency did not provide prior notice and opportunity for public comment. The question is therefore whether the emergency rulemaking violated the express orders of the circuit court's permanent injunction.
The promulgation process for agency rulemaking generally requires, inter alia , a thirty-day notice period and opportunity for comment prior to adopting a new rule. See Ark. Code Ann. § 25-15-204 (Repl. 2017). But that provision also contemplates emergent situations requiring swift agency response; specifically, where the agency finds that imminent peril to the public *915 health, safety, or welfare or compliance with a federal law or regulation requires adoption of a rule upon less than thirty days' notice. Ark. Code Ann. § 25-15-204(c). The agency must provide a written statement providing the reasons for that finding. Id. It may then proceed without prior notice or hearing to adopt an emergency rule. Id. But the rule will not be filed until it has garnered legislative approval and it cannot be effective for longer than 120 days. Id.
The record reveals that DHS complied with subsection 204(c)'s requirements when adopting the emergency rule. It provided a written statement explaining its finding of imminent peril to the public health, safety, or welfare absent the emergency rule. To the extent the circuit court disagreed with the stated reasons for the emergency rule, that is not a basis for the contempt order. The statement provided an explanation for the finding and did not merely parrot the statutory language of imminent peril. And the legislature found that explanation meritorious, as it voted to approve the emergency rule and permitted DHS to file it with the Secretary of State. DHS thus "properly promulgated" the emergency rule under the statutorily prescribed process.
To be sure, the permanent injunction was issued because of the circuit court's finding that DHS had failed to substantially comply with the APA's notice and public comment requirements. But the express terms of the permanent injunction order did not preclude the adoption of an emergency rule utilizing the RUGs methodology. It simply required that any such rule be "properly promulgated." DHS did just that when adopting the emergency rule. Because the agency did not violate the express terms of the circuit court's order, we find that the contempt order was in error. It is therefore reversed.
III.
For its second point on appeal, DHS challenges the temporary restraining order enjoining its emergency rule. During the pendency of this appeal, DHS adopted a final rule that supersedes the emergency rule at issue and remains in effect to this day, and the permanent injunction has been dissolved. We must therefore determine whether the doctrine of mootness precludes our review. And we find that it does.
As a general rule, this court will not review issues that are moot. See Terry v. White , 374 Ark. 387, 391, 288 S.W.3d 199, 202 (2008). To do so would be to render advisory opinions, which this court will not do. Id. A case is moot when any judgment rendered would not have any practical legal effect upon a then existing legal controversy. Id. In other words, a moot case presents no justiciable issue for determination by the court. Id. But we may elect to consider a moot issue when it falls within one of two exceptions to the mootness doctrine. The first exception involves issues capable of repetition yet evading review. See Cotten v. Fooks , 346 Ark. 130, 133, 55 S.W.3d 290, 292 (2001). The other exception concerns issues that raise considerations of substantial public interest which, if addressed, would prevent future litigation. See id.
There is no doubt that the adoption of the new rule rendered the temporary restraining order against the emergency rule moot. DHS nevertheless urges this court to consider the matter under both exceptions to the mootness doctrine. It contends the nature of an emergency rule, which may generally last no longer than 120 days, means it is capable of repetition yet evading review. See Ark. Code Ann. § 25-15-204(c). DHS similarly argues that our public interest exception applies *916 because of the periodic necessity of emergency rules. Because our review of the temporary restraining order would necessarily turn on facts unique to this case, we do not believe either exception is applicable. And we accordingly dismiss this issue as moot.
Reversed; dismissed.
Kemp, C.J., and Hart, J., dissent.