Cite as 2021 Ark. 103

# SUPREME COURT OF ARKANSAS

**No.** CV-20-173

|  |  |
|---|---|
| | **Opinion Delivered** May 6, 2021 |
| MONSANTO COMPANY  APPELLANT/CROSS-APPELLEE  V.  ARKANSAS STATE PLANT BOARD; AND ARKANSAS STATE PLANT BOARD MEMBERS IN THEIR OFFICIAL CAPACITIES: WALTER "BRUCE" ALFORD; KYLE BALTZ; RUSSELL BLACK; RUSSELL BRAGG; ROBERT CAMPBELL; MARTY EATON; JOHN FRICKE; TERRY FULLER; GREG HAY; JERRY HYDE; BRAD KOEN; MATTHEW MARSH; MARK MORGAN; DENNIE STOKES; SAM STUCKEY; BARRY WALLS; AND DR. KEN NORTH  APPELLEES/CROSS-APPELLANTS | APPEAL FROM THE PULASKI COUNTY CIRCUIT COURT [NO. 60CV-17-5964]  HONORABLE CHRISTOPHER CHARLES PIAZZA, JUDGE  <u>DISMISSED ON DIRECT APPEAL; AFFIRMED ON CROSS-APPEAL</u>. |

**COURTNEY RAE HUDSON, Associate Justice**

Appellant/cross-appellee, Monsanto Company, appeals the Pulaski County Circuit Court's order denying its motion for judgment on the pleadings in part and concluding that the Arkansas State Plant Board's "Regulation 7" does not violate the Commerce Clause of the United States Constitution and that Regulation 7 is not invalid as being enacted by an unconstitutionally appointed board. Appellees, the Board and its members (the Board), cross-appeal the circuit court's order granting judgment in favor of Monsanto on its claim

that the statute governing appointment of Board members, Arkansas Code Annotated section 2-16-206 (Supp. 2019), is an unconstitutional delegation of the appointment power.[1] We dismiss on direct appeal and affirm on cross-appeal.

Invasive plant species such as Palmer amaranth, also known as pigweed, can result in significantly reduced yields for Arkansas farmers. Monsanto develops and sells products containing dicamba, a chemical compound that is effective for controlling pigweed. Dicamba-based herbicides may only be used on dicamba-tolerant plants. Monsanto also developed seeds that produce dicamba-resistant plants. According to Monsanto, approximately 1.5 million acres of dicamba-tolerant soybeans and 300,000 acres of dicamba-tolerant cotton were planted in Arkansas in 2017. Dicamba is highly volatile, which means it has a tendency to evaporate and fall off-target and injure surrounding vegetation. Low-volatility dicamba products are believed to be superior to older dicamba-based herbicide formulations because they carry less risk of drifting off the application site and into nearby areas. In November 2016, Monsanto received federal regulatory approval for in-crop application of XtendiMax with VaporGrip Technology, its low-volatility dicamba-based herbicide.

In Arkansas, after XtendiMax was approved by the United States Environmental Protection Agency, the Board adopted a regulation reclassifying XtendiMax from a Class A

---

[1]Monsanto's second amended complaint named as defendants Board members Walter "Bruce" Alford, Kyle Baltz, Russell Black, Russell Bragg, Robert Campbell, Marty Eaton, John Fricke, Terry Fuller, Greg Hay, Jerry Hyde, Brad Koen, Matthew Marsh, Mark Morgan, Dennie Stokes, Sam Stuckey, Barry Walls, and Dr. Ken North.

Pesticide to a Class H Pesticide and added date restrictions that Monsanto claimed effectively banned its use in Arkansas for the 2017 growing season. *See* Ark. Code R. § 209.02.4-XIII(B)(2) (Westlaw, current with amendments received through Mar. 15, 2021); *Monsanto v. Ark. State Plant Bd.*, 2019 Ark. 194, 576 S.W.3d 8. In October 2017, Monsanto filed a complaint against the Board for declaratory and permanent injunctive relief. In its original complaint, Monsanto alleged that the Board's "unwritten requirement that pesticide applicants submit research performed by researchers at the University of Arkansas in order to gain approval for use of new pesticides within the State is unconstitutional under the Commerce Clause." The complaint alleged that on January 4, 2017, Governor Asa Hutchinson sent a letter to the Board ordering it to provide more clear guidance to the industry on research requirements that it expected. The Board issued Regulation 7 about eight months later. Regulation 7 became effective in May 2018 and in relevant part provides that

> [t]he Board considers the environment in Arkansas to be unique, therefore there will be a higher consideration given to research that is specific to Arkansas. Research conducted by scientists from universities within the state will be the primary source of expertise to allow the Board to determine if the data is scientifically sound and relevant to growing and cropping conditions in the state of Arkansas. While this expertise shall be used as guidance when considering a product for registration or restricted use, the Board may consider other research sources and is not bound by the advice or findings of any one individual or entity, and any final determination regarding registration rests within the discretion of the board.

Ark. Code R. § 209.02.7-7.

Monsanto amended its complaint in November 2017. The amended complaint asked the circuit court to, among other things (1) declare Arkansas Code Annotated section 2-16-206(a) unconstitutional as an invalid delegation of the appointment power and (2) enjoin

3

the Board from enforcing its allegedly unconstitutional requirement that pesticides be tested by in-state researchers to obtain approval for their use in the state. Regulation 7 was not effective at the time Monsanto filed its amended complaint. The amended complaint did not seek any declaration as to Regulation 7, although it noted that the regulation had been proposed and published for public comment. On March 29, 2018, the circuit court determined that Monsanto's claims were barred by the doctrine of sovereign immunity and dismissed the amended complaint. In an opinion handed down June 6, 2019, this court concluded that Monsanto's action was not subject to the sovereign-immunity defense and reversed and remanded. *Monsanto*, 2019 Ark. 194, 576 S.W.3d 8. We concluded that, although some of Monsanto's claims were moot, "the portions of Monsanto's amended complaint relating to the requirement that pesticide registrants submit research conducted by researchers at the University of Arkansas in order to gain approval for use of the products, and to the constitutionality of the Plant Board's composition and the current statutory process . . . still reflect a ripe and justiciable case or controversy." *Id*. at 8, 576 S.W.3d at 12.

After remand, Monsanto filed its second amended complaint on October 15, 2019. The second amended complaint narrowed the issues to (1) a claim to declare Regulation 7 invalid and unconstitutional under the Commerce Clause of the United States Constitution and (2) a claim to declare that portions of Arkansas Code Annotated section 2-16-206 violate the Arkansas Constitution and federal due process guarantees. Subsequently, the parties filed cross-motions for judgment on the pleadings as to both claims. On January 24, 2020, the circuit court granted judgment in favor of Monsanto on its claim that Arkansas Code

Annotated section 2-16-206(a)(5)–(13) is an unconstitutional delegation of the appointment power. However, the court denied Monsanto's motion challenging the constitutionality of Regulation 7 and granted the Board's motion for judgment on the pleadings on that claim. The court also declined to invalidate Regulation 7 on the ground that it had been enacted by an unconstitutionally appointed board whose authority was disputed at the time the regulation was promulgated. On January 31, 2020, Monsanto filed a timely notice of appeal. The Board filed a notice of cross-appeal on February 10.

A motion for judgment on the pleadings is appropriate if the pleadings show on their face that there is no merit to the suit. *Steinbuch v. Univ. of Ark.*, 2019 Ark. 356, 589 S.W.3d 350. When we review the granting of judgment on the pleadings, we view the facts alleged in the complaint as true and in the light most favorable to the party seeking relief. *Id*. We will affirm the circuit court's decision in the absence of an abuse of discretion. *See Rhodes v. Kroger Co.*, 2019 Ark. 174, 575 S.W.3d 387. An abuse of discretion is a high threshold that requires not only that the circuit court's decision was erroneous but also that the ruling was made improvidently, thoughtlessly, or without due consideration. *Id*. However, the correct interpretation and application of an Arkansas statute is a question of law, which we decide de novo. *Calhoun v. Area Agency on Aging of Se. Ark.*, 2021 Ark. 56, 618 S.W.3d 137. Under our rules of civil procedure, a pleading that sets forth a claim for relief must contain "a statement in ordinary and concise language of facts showing that the court has jurisdiction of the claim and is the proper venue and that the pleader is entitled to relief." Ark. R. Civ. P. 8(a)(1) (2020).

As with statutes, we presume the validity and constitutionality of an agency's rules and regulations. *Dukes v. Norris*, 369 Ark. 511, 256 S.W.3d 483 (2007). This presumption places the burden of proof on the party challenging the rule. *Ark. Dep't of Corr. v. Bailey*, 368 Ark. 518, 247 S.W.3d 851 (2007). If possible, all doubts will be resolved in favor of the constitutionality of the statute or rule, and we will strike down a statute or rule only when there is a clear and unmistakable conflict with the constitution. *Id*. We will affirm the circuit court's ruling upholding the constitutionality of a statute or rule if it is correct for any reason, regardless of whether the specific reason was raised or ruled upon below. *Alexander v. Chapman*, 299 Ark. 126, 770 S.W.2d 744 (1989).

On direct appeal, Monsanto argues that the circuit court erred in ruling that Regulation 7 does not violate the Commerce Clause of the U.S. Constitution. Monsanto contends that the circuit court failed to apply "rigorous scrutiny" in evaluating the constitutionality of Regulation 7. Arguing further, Monsanto contends that Regulation 7 is unconstitutional even if it is evaluated under a less stringent "clearly excessive" test. Finally, Monsanto insists that Regulation 7 cannot stand because it was enacted by an unconstitutionally appointed board.

As a preliminary matter, we must consider the Board's procedural arguments. The Board argues that this appeal should be dismissed because Monsanto failed to exhaust its administrative remedies, that it lacks standing, and that it failed to present a justiciable controversy in its challenge to Regulation 7. We address each in turn.

First, the doctrine of exhaustion has been applied even to constitutional challenges. *McGhee v. Ark. State Bd. of Collection Agencies*, 368 Ark. 60, 243 S.W.3d 278 (2006).

However, if a party does not have a pending matter before the agency and seeks declaratory relief, the doctrine of exhaustion of administrative remedies is inapplicable. *Id.* Indeed, Arkansas Code Annotated section 25-15-207(d) (Repl. 2014) provides that "[a] declaratory judgment may be rendered whether or not the plaintiff has requested the agency to pass upon the validity or applicability of the rule in question." Here, the pleadings contain no facts to indicate that Monsanto has a matter pending before the Board, and Monsanto seeks a declaratory judgment regarding the constitutionality and validity of a Board regulation. Accordingly, Monsanto was not required to administratively exhaust its claims for declaratory relief.

The Board's standing and justiciability arguments, however, merit further discussion. At the hearing before the circuit court, counsel for the Board noted that Regulation 7 changed the old, unwritten rule that, as Monsanto had alleged, required research from University of Arkansas researchers. Counsel further argued that Monsanto's claim was "speculative, it's unripe, [and] it doesn't present a justiciable controversy." Arkansas Code Annotated section 25-15-207(a) provides that the validity or applicability of a rule may be determined in an action for declaratory relief "if it is alleged that the rule, or its threatened application, injures or threatens to injure the plaintiff in his or her person, business, or property." We have said that to establish standing, an appellee is required to "show [only] that they were among the class of persons affected by the legislation." *Martin v. Kohls*, 2014 Ark. 427, at 8, 444 S.W.3d 844, 849; *see also Jegley v. Picado*, 349 Ark. 600, 80 S.W.3d 332 (2002) (holding that plaintiffs could challenge sodomy statute despite never having been prosecuted thereunder). Although the Board argues that Monsanto is attempting to assert

7

claims on behalf of out-of-state researchers, we believe the Board reads Monsanto's complaint too narrowly. Monsanto is in the business of manufacturing and selling agricultural chemicals that the Board regulates. Monsanto claims that Regulation 7 incentivizes companies seeking to register products in Arkansas to use Arkansas researchers, which may preclude its use of the most economical researchers who may be out-of-state. Therefore, we conclude that Monsanto is in the class of plaintiffs affected by the Board's rules, and it has standing to assert its own claim. *See Nelson v. Ark. Rural Med. Practice Loan & Scholarship Bd.*, 2011 Ark. 491, 385 S.W.3d 762 (stating that only a claimant who has a personal stake in the outcome of a controversy has standing). However, a party seeking a declaratory judgment must still demonstrate a justiciable controversy. A case is nonjusticiable "when any judgment rendered would have no practical legal effect upon a then-existing legal controversy." *Rogers v. Knight*, 2017 Ark. 267, at 3, 527 Ark. 719, 721 (quoting *Neely v. McCastlain*, 2009 Ark. 189, at 5, 306 S.W.3d 424, 427). In *Nelson* we considered a case filed pursuant to our declaratory-judgment statute and explained that the statute was

> applicable only where there is a present actual controversy, and all interested persons are made parties, and only where justiciable issues are presented. It does not undertake to decide the legal effect of laws upon a state of facts which is future, contingent or uncertain. A declaratory judgment will not be granted unless the danger or dilemma of the plaintiff is present, not contingent on the happening of hypothetical future events; the prejudice to his position must be actual and genuine and not merely possible, speculative, contingent, or remote.

*Id.* at 12, 385 S.W.3d at 769 (internal citations omitted).

In *Baptist Health Systems v. Rutledge*, 2016 Ark. 121, at 5, 488 S.W.3d 507, 510, we said that "[w]ithout a sufficient record to show an actual, present controversy, this court cannot opine on the merits of the constitutional arguments raised in the Hospitals'

declaratory-judgment suit." In this instance, we must decide this appeal based on the pleadings, and Arkansas is a fact pleading state. Ark. R. Civ. P. 8(a)(1). Simply put, Monsanto's pleadings do not contain facts sufficient to establish an actual, present controversy. Virtually all of the facts that Monsanto alleged in its operative complaint concern events that occurred well before Regulation 7 was adopted. The justiciable issue that we identified previously, that of the Board's "unwritten requirement that pesticide applicants submit research performed by researchers at the University of Arkansas in order to gain approval for use of new pesticides within the State[,]" is no longer an issue because Regulation 7 does not require in-state research, and it specifically states that the Board is not bound by the advice or findings of any one individual or entity. Monsanto's pleadings do not assert that Regulation 7 has ever been applied to adversely affect any of its proposed products. The pleadings do not state that XtendiMax's usage has been prohibited pursuant to Regulation 7, or that Monsanto has even attempted to present research that, after Regulation 7's effective date, was deemed insufficient because of the researcher's state of residence. Indeed, at oral argument, Monsanto's counsel conceded not only that XtendiMax is approved for use in Arkansas, but also that any restrictions that the Board placed on XtendiMax's usage are identical to any other low-volatility dicamba-based herbicide. Monsanto alleged no facts in its pleadings, or even at oral argument, to establish that Regulation 7 has injured, or threatens to injure, its interests. On the contrary, Monsanto's concessions at oral argument confirm that it has been successful with the research it presented in obtaining approval for XtendiMax's use in Arkansas. Monsanto's pleadings at most described harm that is merely possible, speculative, contingent, or remote. *See Nelson*,

9

2011 Ark. 491, 385 S.W.3d 762. Because the record is not sufficient to show an actual, present controversy, we do not reach the merits of Monsanto's claims regarding Regulation 7, and we dismiss its appeal. *See Baptist Health*, 2016 Ark. 121, 488 S.W.3d 507.

We turn now to the Board's cross-appeal. In it, the Board argues that the circuit court erred by ruling Arkansas Code Annotated section 2-16-206(a)(5)–(13) unconstitutional as an invalid delegation of the appointment power. The Board contends that there is no "clear and unmistakable" conflict between the Board's appointment statute and the Arkansas Constitution. In a companion case handed down today, we determined that section 2-16-206(a)(5)–(13) violates our constitution. *McCarty v. Ark. State Plant Bd.*, 2021 Ark. 105, 622 S.W.3d 162. For the reasons set forth in *McCarty*, we affirm the circuit court's ruling declaring section 2-16-206(a)(5)–(13) unconstitutional.

Dismissed on direct appeal; affirmed on cross-appeal.

BAKER, J., dissents.

**KAREN R. BAKER, Justice, dissenting.** I dissent from the majority opinion for the reasons explained in my opinion in *Monsanto Co. v. Arkansas State Plant Board*, 2019 Ark. 194, at 10, 576 S.W.3d 8, 14 (Baker, J., concurring in part; dissenting in part), and would affirm on direct appeal and reverse and dismiss on cross-appeal.

*Brett D. Watson*, *Attorney at Law PLLC*, by: *Brett D. Watson*; *Thompson Coburn LLP*, by: *Ryan Russell Kemper*; and *Bryan Cave Leighton Paisner LLP*, by: *A. Elizabeth Blackwell* and *Stefani L. Wittenauer*, for appellant/cross-appellee.

*Leslie Rutledge*, Att'y Gen., by: *Jennifer L. Merritt*, Sr. Ass't Att'y Gen., for appellees/cross-appellants.