Cite as 2022 Ark. 119

# SUPREME COURT OF ARKANSAS

No. CV–21–624

|  |  |
|---|---|
| PHILIP PALADE, GREGORY BORSE, AND J. THOMAS SULLIVAN, ON BEHALF OF THEMSELVES AND ALL OTHERS SIMILARLY SITUATED<br>APPELLANTS<br><br>V.<br><br>BOARD OF TRUSTEES OF THE UNIVERSITY OF ARKANSAS SYSTEM; ED FRYAR, PH.D., IN HIS OFFICIAL CAPACITY AS TRUSTEE; STEVE COX, IN HIS OFFICIAL CAPACITY AS TRUSTEE; TOMMY BOYER, IN HIS OFFICIAL CAPACITY AS TRUSTEE; SHEFFIELD NELSON, IN HIS OFFICIAL CAPACITY AS TRUSTEE; C.C. GIBSON, IN HIS OFFICIAL CAPACITY AS TRUSTEE; STEPHEN BROUGHTON, M.D., IN HIS OFFICIAL CAPACITY AS TRUSTEE; KELLY EICHLER, IN HER OFFICIAL CAPACITY AS TRUSTEE; MORRIL HARRIMAN, IN HIS OFFICIAL CAPACITY AS TRUSTEE; MARK WALDRIP, IN HIS OFFICIAL CAPACITY AS TRUSTEE; AND JOHN GOODSON, IN HIS OFFICIAL CAPACITY AS TRUSTEE<br>APPELLEES | **Opinion Delivered:** June 2, 2022<br><br>APPEAL FROM THE PULASKI COUNTY CIRCUIT COURT, SEVENTEENTH DIVISION<br>[NO. 60CV-20-3218]<br><br>HONORABLE MACKIE M. PIERCE, JUDGE<br><br><u>AFFIRMED</u>. |

**COURTNEY RAE HUDSON, Associate Justice**

Appellants Philip Palade, Gregory Borse, and J. Thomas Sullivan, on behalf of themselves and all others similarly situated, appeal from the Pulaski County Circuit Court's order dismissing without prejudice their claims against appellees, the Board of Trustees of the University of Arkansas System and Ed Fryar, Ph.D., Steve Cox, Tommy Boyer, Sheffield Nelson, C.C. Gibson, Stephen Broughton, M.D., Kelly Eichler, Morril Harriman, Mark Waldrip, and John Goodson, in their official capacities as Trustees (collectively, "the Board"). For reversal, appellants argue that the circuit court erred by determining that they lacked standing and that their claims were unripe and nonjusticiable. We affirm.

In May 2019, appellants, as tenured faculty members employed by the University of Arkansas System, filed suit in federal district court against the Board seeking declaratory and injunctive relief based on alleged violations of both federal and Arkansas law. The complaint asserted that on March 29, 2018, the Board adopted revisions to Policy 405.1 ("Revised Policy"), which governs faculty promotion, tenure, and annual reviews. Appellants claimed that when the Board passed the Revised Policy, it unilaterally and without the consent of appellants or others in the class made material changes to tenured and tenure-track faculty member's contractual rights as employees and violated their constitutional rights. Specifically, appellants complained about the changes that were made to the section defining cause for termination. The complaint alleged violations of the United States Constitution's Contracts and Due-Process Clauses, as well as First Amendment and Academic Freedom claims. Appellants also asserted state claims under the Arkansas Constitutions' Contracts and Free Communication Clauses and the Arkansas common law of contracts. The Board filed a motion to dismiss the action, arguing that the state-law claims were barred by the Eleventh

2

Amendment and sovereign immunity and that the remaining claims should be dismissed based on lack of standing, unripeness, and failure to state a claim. Appellants conceded that the state-law claims were prohibited by the Eleventh Amendment, and the district court dismissed these claims on that basis. *Palade v. Bd. of Trustees of the Univ. of Ark.*, No. 4:19CV379-JM (E.D. Ark. Mar. 16, 2020). With regard to the federal claims, the district court agreed that the claims were not ripe and did not present a justiciable controversy and granted the Board's motion to dismiss. *Id.*[1]

On June 2, 2020, appellants filed a class-action complaint in the Pulaski County Circuit Court, reasserting the same state-law claims that were dismissed in the federal suit. Appellants again focused their allegations on the Revised Policy's changes to the section on cause for termination of employment, and they attached the old and new versions of the policy to the complaint. The original Policy 405.1, which was in effect from October 2, 2001, until March 29, 2018, contained the following definition of cause:

> "Cause" is defined as conduct which demonstrates that the faculty member lacks the ability or willingness to perform his or her duties or to fulfill his or her responsibilities to the University; examples of such conduct include (but are not limited to) incompetence, neglect of duty, intellectual dishonesty, and moral turpitude.

The Revised Policy adopted on March 29, 2018, however, stated:

> Cause is defined as conduct that demonstrates the faculty member lacks the willingness or ability to perform duties or responsibilities to the University, or that otherwise serves as a basis for disciplinary action. Pursuant to procedures set out herein or in other University or campus policies, a faculty member may be disciplined or dismissed for cause on grounds including, but not limited to, (1) unsatisfactory performance, consistent with the requirements of section V.A.9 below, concerning

---

[1]Appellants appealed to the Eighth Circuit, which summarily affirmed the dismissal. *Palade v. Bd. of Trustees of the Univ. of Ark.*, 830 Fed. Appx. 171 (8th Cir. 2020). Appellants' petition for a writ of certiorari with the United States Supreme Court was also denied on October 4, 2021.

3

annual reviews; (2) professional dishonesty or plagiarism; (3) discrimination, including harassment or retaliation, prohibited by law or university policy; (4) unethical conduct related to fitness to engage in teaching, research, service/outreach and/or administration, or otherwise related to the faculty member's employment or public employment; (5) misuse of appointment or authority to exploit others; (6) theft or intentional misuse of property; (7) incompetence or a mental incapacity that prevents a faculty member from fulfilling his or her job responsibilities; (8) job abandonment; (9) a pattern of conduct that is detrimental to the productive and efficient operation of the instructional or work environment; (10) refusal to perform reasonable duties; (11) threats or acts of violence or retaliatory conduct; or (12) violation of University policy, or state or federal law, substantially related to performance of faculty responsibilities or fitness to serve the University. Nothing in this provision is intended to inhibit expression that is protected under principles of academic freedom, or state or federal law.

Appellants alleged that the Revised Policy, which by its terms applied to all faculty, including those who had already obtained tenure or entered the tenure-track, made both quantitative and qualitative changes to the definition of cause. Appellants claimed that by adding the phrase "or that otherwise serves as a basis for disciplinary action," as well as listing additional types of conduct warranting discipline or dismissal, the Board both expanded the number of grounds that justify termination and adopted entirely new types of grounds for dismissal. Based on these changes, appellants asserted that the Revised Policy violated the Contracts Clause contained in Article 2, Section 17 of the Arkansas Constitution by substantially impairing the contractual relationship between the class and the Board without a legitimate public purpose to justify the revisions; that the Revised Policy constituted an impermissible modification of the Board's contract with the class members without their consent under the Arkansas common law of contracts; and that the Revised Policy violated the class's rights under the Free Communication Clause found in Article 2, Section 6 of the Arkansas Constitution.

4

On July 20, 2020, the Board filed an answer to the complaint, as well as a motion for judgment on the pleadings. In its motion, the Board asserted that it had amended its policy on faculty tenure and promotion more than a dozen times during the last fifty years and that all of the more recent revisions have expressly reserved the right to amend "any portion" of the tenure policy "at any time in the future." The Board indicated that the Revised Policy addresses performance expectations and clarifies, rather than expands, its conduct standards. According to the Board, it interpreted the phrase "otherwise constitutes a basis for dismissal" in the Revised Policy as merely referring to the list of examples of "cause," and there was no basis for predicting that the University would take an impermissibly expansive view of the various examples. In addition, the Board noted that the revised definition of cause states that nothing in that provision is intended to inhibit expression protected under principles of academic freedom or state or federal law, and a separate section further guarantees academic freedom and the right to speak on matters of public concern. The Board argued that appellants had not alleged any facts suggesting that their current employment was in jeopardy, that they had been threatened with disciplinary action under the Revised Policy, or that they had engaged in conduct violative of the Revised Policy; nor had appellants made any non-conclusory allegations in their complaint regarding plans to engage in conduct that would plausibly be prohibited by the Revised Policy but allowed by the prior version. Thus, the Board claimed that appellants' contract and free speech claims were unripe and nonjusticiable and that appellants lacked standing. The Board also argued that appellants had failed to plead facts demonstrating that an

5

unconstitutional or illegal action had occurred, is about to occur, or has been threatened, and therefore, the suit was also barred by sovereign immunity.

Following a response by appellants and a reply by the Board, the Board filed a supplemental motion to dismiss on August 4, 2021, alleging that appellants' claims were also barred by collateral estoppel based on the dismissal of their similar claims in federal court. The circuit court held a hearing on the motions on August 30, 2021. On September 2, 2021, the circuit court entered an order granting the Board's motion for judgment on the pleadings and dismissing the complaint without prejudice. The court found that appellants lacked standing and that their claims were unripe and nonjusticiable. The circuit court stated that appellants "claims are speculative[,] and they have failed to demonstrate actual or imminent injury or harm." The court specifically noted that it did not consider text messages or other evidence presented by counsel for the Board as proof that appellants' conduct had not been restrained under the Revised Policy because these items were outside the scope of the pleadings. The circuit court did not rule on the Board's alternative grounds for dismissal, such as sovereign immunity. Appellants filed a timely notice of appeal from the circuit court's order.

On appeal, appellants argue that the circuit court erred by granting the Board's motion for judgment on the pleadings on the bases that appellants lacked standing and that their claims were unripe and nonjusticiable. A motion for judgment on the pleadings is appropriate if the pleadings show on their face that there is no merit to the suit. *Monsanto Co. v. Ark. State Plant Bd.*, 2021 Ark. 103, 622 S.W.3d 166. When reviewing a grant of judgment on the pleadings, we view the facts alleged in the complaint as true and in the

light most favorable to the party seeking relief. *Id.* We will affirm the circuit court's decision in the absence of an abuse of discretion. *Id.* Issues of law such as standing or justiciability, however, are reviewed de novo on appeal. *Baptist Health Sys. v. Rutledge*, 2016 Ark. 121, 488 S.W.3d 507; *Nelson v. Ark. Rural Med. Practice Loan & Scholarship Bd.*, 2011 Ark. 491, 385 S.W.3d 762.

Appellants contend that they have standing to bring this action under the Declaratory Judgment Act, Ark. Code Ann. §§ 16-111-101 et seq. (Repl. 2019). The purpose of the declaratory-judgment statutory scheme is "to settle and to afford relief from uncertainty and insecurity with respect to rights, status and other legal relations," and it "is to be liberally construed and administered." Ark. Code Ann. § 16-111-112. Section 16-111-102 provides that "[a]ny person interested under a . . . written contract or other writings constituting a contract, or whose rights, status, or other legal relations are affected by a . . . contract . . . may have determined any question of construction or validity arising under the . . . contract . . . and obtain a declaration of rights, status or other legal relations thereunder."

We have held that the following elements must be established to obtain declaratory relief: (1) a justiciable controversy; that is to say, a controversy in which a claim of right is asserted against one who has an interest in contesting it; (2) the controversy must be between persons whose interests are adverse; (3) the party seeking declaratory relief must have a legal interest in the controversy; in other words, a legally protectable interest; and (4) the issue involved in the controversy must be ripe for judicial determination. *Baptist Health*, *supra*; *Nelson*, *supra*. *See also* Ark. Code Ann. § 16-111-106 (stating that a court may refuse to

7

enter a declaratory judgment where such judgment would not terminate the uncertainty or controversy giving rise to the proceeding). As we explained in *Nelson*,

> [t]he Declaratory Judgment Statute is applicable only where there is a present actual controversy, and all interested persons are made parties, and only where justiciable issues are presented. It does not undertake to decide the legal effect of laws upon a state of facts which is future, contingent or uncertain. A declaratory judgment will not be granted unless the danger or dilemma of the plaintiff is present, not contingent on the happening of hypothetical future events; the prejudice to his position must be actual and genuine and not merely possible, speculative, contingent, or remote.

*Id*. at 12, 385 S.W.3d at 769.

Appellants contend that they have established all of the elements necessary to be entitled to declaratory relief. They assert that a justiciable controversy exists regarding the validity of the Board's unilateral modifications of the tenure and dismissal policy and its retroactive application to appellants. In addition, appellants argue that the parties are adverse, that they have a legally protectable interest in their tenure contracts, and that the dispute is ripe for adjudication because the injury, i.e., the modification of their contract without their consent, has already occurred. Appellants claim that it is not necessary for them to wait until they are faced with an imminent threat of disciplinary action or termination under the Revised Policy to bring this action and cite *Jegley v. Picado*, 349 Ark. 600, 80 S.W.3d 332 (2002), in support.

In *Jegley*, the prosecutor argued that the plaintiffs' suit challenging the constitutionality of the sodomy statute was not justiciable because plaintiffs had shown no credible threat of imminent prosecution. We rejected that argument, noting that we had not always required prosecution or a specific threat of prosecution as a prerequisite for challenging a statute. *Id*. Instead, because the plaintiffs claimed that they were presently

8

engaged in the same type of conduct prohibited by the statute and intended to continue to engage in that conduct, the State had refused to disavow enforcement of the statute, and there had been previous prosecutions under that statute for public and nonconsensual conduct, we determined that the plaintiffs were not without reason to fear prosecution and were therefore entitled to bring their declaratory-judgment action. *Id.*

We hold that *Jegley* is distinguishable from the situation in the present case, where the harm alleged by appellants is uncertain, hypothetical, and speculative. In their complaint, appellants alleged violations of the Contracts Clause and the Arkansas common law of contracts based upon their contention that the Board might, in the future, apply the Revised Policy to unspecified conduct that could not have been the subject of disciplinary action under the prior version of the policy. Appellants did not claim that they had engaged in a specific type of conduct that would be included in the revised definition of cause; nor did they claim that they intended to engage in such conduct. Appellants have also not alleged that any other faculty members have been disciplined or dismissed based on actions or speech that would not have been prohibited under the previous policy. Further, the Board has asserted that the revisions to the definition of cause were intended only to clarify, rather than expand, the type of behavior that would be cause for discipline or termination. As the district court stated in the parties' federal suit, "Plaintiffs' allegations of the University's possible use of the Revised Policy to discipline or terminate a faculty member for reasons not covered or beyond those allowed in the original policy are speculative." *Palade*, No. 4:19CV379-JM, at 6.

9

Appellants also cite *Maytag Corp. v. Int'l Union, United Auto., Aerospace & Agric. Implement Workers of Am.* 687 F.3d 1076 (8th Cir. 2012), as a case where the Eighth Circuit found that the plaintiffs had standing under similar circumstances. In *Maytag*, an employer filed suit against a labor union and representatives of a putative class of retired employees, seeking a declaratory judgment that the employer had the right to unilaterally modify retirees' health care benefits provided under a collective bargaining agreement. The Eighth Circuit concluded that a case or controversy existed because the contractual dispute was "real, substantial, and existing," even though the case was filed before the employer had given notice of the unilateral modifications. *Id.* at 1082. In addition, the Eighth Circuit determined that the dispute was ripe for immediate judicial resolution because whether the retiree benefits were vested turned on historical rather than hypothetical facts. *Id.* While appellants contend that this case is persuasive authority, the Eighth Circuit's decision to affirm the district court's dismissal based on a lack of ripeness in appellants' federal suit, which involved the same facts and similar claims as the present case, is more persuasive. Appellants also relied on *Maytag* in the federal action; however, the district court distinguished it, finding that "the policy changes here did not make changes to historically disputed benefits, but instead changed definitional language which may or may not be applied in the future in a manner different from the original policy definition or in a manner which violates federal law." *Palade*, No. 4:19CV379-JM, at 6. Thus, the circuit court did not err by determining that appellants' contract claims were nonjusticiable.

Similarly, appellants' claim pursuant to the Free Communication Clause of the Arkansas Constitution also fails to meet the required elements for a declaratory judgment.

Appellants alleged in their complaint that the Revised Policy greatly expands the ground for termination and that the changes had a "serious impact on the Class members' right to freely communicate thoughts and opinions at his or her respective academic institution." They claimed that they had "already suffered a chilling effect after the passage of the Revised Policy, including being extremely cautious of what is said in class and what topics and thoughts may be discussed openly in class without fear of termination under the Revised Policy." Appellants argue that they can establish standing based on the doctrine of overbreadth, which they contend allows them to challenge the Revised Policy even though they have not yet been threatened with discipline or termination based upon their speech.

As the Board asserts, however, a plaintiff making an overbreadth claim still must establish standing and an actual or impending injury. *See, e.g.*, *Advantage Media, LLC v. City of Eden Prairie*, 456 F.3d 793 (8th Cir. 2006) (stating that the overbreadth doctrine does not relieve a plaintiff of the burden to show constitutional standing, and the plaintiff therefore must demonstrate an actual, concrete, and particularized injury); *Get Outdoors II, LLC v. City of San Diego*, 506 F.3d 886 (9th Cir. 2007) (holding that even when raising an overbreadth claim, the plaintiff must show that he or she has suffered an injury in fact and can satisfactorily frame the issues on behalf of non-parties). Here, while appellants claim that their speech has been chilled, they have failed to include any factual allegations as to what speech they have refrained from making or provide any examples of speech that they have made in the past that they believe is not allowed under the Revised Policy. Nor have they alleged that they or any other faculty member has been reprimanded pursuant to the Revised Policy on the basis of their speech. Furthermore, the Revised Policy expressly

11

provides that nothing in the section on cause is intended to inhibit expression protected by principles of academic freedom or state or federal law, and the section on academic freedom states that the threat of dismissal will not be used to restrain faculty members in their exercise of academic freedom or constitutional rights.

Appellants have made only vague, speculative, and hypothetical allegations with regard to how their constitutional rights have been violated by the Revised Policy, and they have failed to plead facts sufficient to establish an actual, present controversy. *See Palade*, No. 4:19CV379-JM, at 7 (stating that the "[p]laintiffs' allegations of possible, but not threatened, enforcement of the Revised Policy in a manner that might but might not violate federal law is insufficient to establish injury in fact" for purposes of plaintiffs' First Amendment challenge); *see also Baptist Health*, *supra* (stating that without a sufficient record to show an actual, present controversy, we cannot opine on the merits of the constitutional arguments raised in the declaratory-judgment suit). As we stated earlier, a declaratory judgment does not undertake to decide the legal effect of laws upon a state of facts that is future, contingent, or uncertain. *Nelson*, *supra*. Accordingly, the circuit court correctly dismissed appellants' free-speech claim based on a lack of a justiciable controversy.

In addition to asserting that appellants' claims are nonjusticiable, the Board argues that we can also affirm the circuit court's dismissal on the basis of collateral estoppel. The Board contends that the dismissal of appellants' federal claims operates as a bar to relitigating the issue of justiciability in the circuit court. Although the circuit court did not rule on this issue, the Board claims that we may affirm if the lower court reached the right result, albeit

12

for the wrong reason. Because we affirm the dismissal on the basis relied upon on by the circuit court, however, we do not address the Board's alternative argument.

Affirmed.

WOMACK and WEBB, JJ., concur.

**SHAWN A. WOMACK, Justice, concurring**. I agree with the majority's disposition, and I further agree with its conclusion on the merits that appellants failed to present a justiciable controversy. However, I write separately to point out that article 5, section 20 of the Arkansas Constitution precludes this action against a State entity regardless of whether a justiciable controversy exists. *See Thurston v. League of Women Voters of Ark.*, 2022 Ark. 32, at 16, 639 S.W.3d 319, 327 (Womack, J., dissenting).

Nevertheless, our decision in *Arkansas Tech University v. Link*, 341 Ark. 495, 17 S.W.3d 809 (2000), illustrates that appellants are not without recourse. There, a group of tenured professors at Arkansas Tech University (ATU) filed a petition for declaratory judgment against ATU and the members of its Board of Trustees, alleging that changes the Board made to its employee health-insurance policy violated their vested contractual rights. *Id.* at 498–99, 17 S.W.3d at 811. ATU and the Board appealed from the circuit court's denial of its motion to dismiss on sovereign-immunity grounds. *Id.* at 500, 17 S.W.3d at 812. On appeal, this court reversed and held that the petition was essentially a breach-of-contract claim and should have been brought in the Arkansas Claims Commission. *Id.* at 502, 17 S.W.3d at 813.

Similarly, appellants here filed a petition for declaratory judgment challenging revisions the Board made to its tenure policy. Appellants alleged that when the Board

13

adopted the Revised Policy, the Board "unilaterally and without the consent of Plaintiffs or the others within the Class made material changes to tenured and tenure-track faculty members' contractual rights" and "violated the constitutional rights of Plaintiffs." In essence, appellants' allegation is a breach-of-contract claim and they, like the professors in *Link*, are entitled to bring a complaint with the Claims Commission. *See also* Ark. Code Ann. § 19-10-208(c).

I respectfully concur.

**BARBARA W. WEBB, Justice, concurring**. I agree with nearly all the concurring opinion authored by Justice Womack except that I do not believe that article 5, section 20 of the Arkansas Constitution precludes this action against the State. Apart from the second sentence of Justice Womack's opinion, I agree wholeheartedly with his reasoning and conclusions. I respectfully concur.

*Quattlebaum, Grooms & Tull, PLLC*, by: *Joseph W. Price II* and *Brittany S Ford*, for appellants.

*David A. Curran*, Associate General Counsel, University of Arkansas System, for appellees.