Cite as 2025 Ark. App. 440

# ARKANSAS COURT OF APPEALS

DIVISION II

No. CV–24–231

| | |
|---|---|
| LINDA DRIVER; AND BETHEL TEMPLE PENTECOSTAL CHURCH, INC.<br><br>APPELLANTS<br><br>V.<br><br>HOLY TRINITY CHURCH OF GOD IN CHRIST, FORMERLY KNOWN AS EAST END CHURCH OF GOD IN CHRIST<br><br>APPELLEE | **Opinion Delivered** September 24, 2025<br><br>APPEAL FROM THE MONROE COUNTY CIRCUIT COURT<br>[NO. 48CV-20-21]<br><br>HONORABLE CHALK S. MITCHELL, JUDGE<br><br>REVERSED |

**BRANDON J. HARRISON, Judge**

Holy Trinity Church of God in Christ sued in March 2020 for a declaratory judgment settling whether Holy Trinity or Bethel Temple Pentecostal Church, Inc. owned two and a half lots and a church building in Brinkley.[1] The complaint named three members of the Butler family who signed deeds in 2019 and 2020 conveying the property as Holy Trinity's trustees. The key allegation for this appeal was that "Bethel Temple is the current occupant of the property," and Linda Driver, its pastor and the last defendant, "had notice of the questionable title prior to the sale." The complaint included a general plea for relief

---

[1]The legal description is "ALL OF LOTS 13 AND 14 AND THE WEST ONE-HALF OF LOT 15, BLOCK 8, DONNELLY'S FIRST ADDITION TO THE CITY OF BRINKLEY, MONROE COUNTY, ARKANSAS."

to include damages, an injunction, and the cancellation of the two deeds, but it did not purport to state any statutory or common–law claim.

The case limped forward. Almost all the proceedings focused on who had title. The circuit court decided Holy Trinity does; no one has appealed that decision. The issue here is whether the circuit court should have granted Driver's motion to be removed as a party.

In the lead up to a September 2021 trial setting, Holy Trinity moved for summary judgment, attaching affidavits from its current pastor and a bishop of the National Church of God in Christ to the effect that the property could not be conveyed without consent from the bishop and congregation, and no such consent was given. They also swore that none of the Butler defendants had the trustee capacities they recited in the deeds. Bethel Temple responded and mostly rested on legal arguments, but it attached an affidavit from Pastor Driver denying that she knew about any barrier to the sale. On 7 September 2021, Pastor Driver followed with a motion to dismiss under Arkansas Rule of Civil Procedure 12(b)(6). She attached her summary-judgment affidavit to the motion.[2]

The circuit court granted summary judgment to Holy Trinity and denied Pastor Driver's motion in one order entered 9 May 2023. It recites that the court "consider[ed] the entire file." The Bethel Temple defendants filed a timely notice of appeal from a final judgment entered August 7 that incorporated the May 9 order and awarded Holy Trinity title, possession, court costs, and an injunction but no damages. The judgment added one

---

[2]The affidavit appears before the motion in the record. Pastor Driver filed the papers by facsimile. The transmission header indicates she sent the motion first, the brief second, and the exhibits last. They appear brief first, exhibits second, motion last in the record.

more relevant finding: "Defendants failed to present a justiciable issue of law or fact, and they wrongfully interfered with the legal rights of Holy Trinity."

On appeal, Pastor Driver argues the circuit court should have dismissed her from the action; and in any event, she did not wrongfully interfere with Holy Trinity's rights. Specifically, she challenges findings she contends it made in the May 9 order and the later finding that she "wrongfully interfered" with Holy Trinity's rights. Holy Trinity argues her appeal is moot—indeed frivolous under Ark. R. App. P.–Civ. 11.

We start with the May 9 order:

5. Defendants Driver, Janifer, and Brenda argue that, as to them, the pleadings fail to state a claim upon which relief can be granted and there are no allegations in the complaint that they engaged in any conduct that is actionable and that each should be dismissed from this lawsuit. However, pursuant to Arkansas procedural and state law, in testing the sufficiency of a complaint, courts treat the facts alleged in the complaint as true and view them in the light most favorable to the plaintiff. All reasonable inferences must be resolved in favor of the complaint, and the pleadings are to be liberally construed. *Baptist Health v. Murphy*, 373 S.W.3d 269, 277–78 (Ark. 2010). Rules 8(a)(1) and 12(b)(6) of the Arkansas Rules of Civil Procedure must be read together in testing the sufficiency of a complaint. *Dockery v. Morgan*, 2011 Ark. 94, 380 S.W.3d 377 (2011).

6. The nature of the Plaintiff's suit is that of a petition seeking a declaratory judgment as to the rights of the parties to the church property. At all times relevant to this cause of action, all defendants have been parties to the deeds in question and all conduct complained of against the defendants alleged unlawful transfers led to the divesting of the title held by Holy Trinity since 1989.

7. Here, the pleadings allege that the defendants knowingly participated in sham transactions and were parties to deeds which attempted to divest Holy Trinity of its property. They were all complicit in the wrongful/fraudulent conduct that resulted in the church title being improperly transferred. According to the sworn affidavits of the church leaders. Janis and Brenda had never served as trustees, and Mary had no authority to unilaterally sell the property and receive payment in her individual capacity. Also, Driver had access to the Title Insurance report which clearly showed that Holy Trinity was the sole holder of the title and made payment to Mary, and not to Holy Trinity. Accordingly, it is not unreasonable to infer that all defendants interfered with the property rights of Holy Trinity.

3

8. The Complaint clearly and concisely states the chain of title involving the three deeds, two of which Defendants Linda, Janis, and Brenda were named in as parties to the transactions seeking to take away Holy Trinity's property rights. The Complaint further states that all three deeds in this case were "duly recorded" and that the deeds were "subsequent unlawful attempted transfers" which certainly infers that all defendants conspired to divest title from Holy Trinity. Finally, the Complaint's prayer for relief also includes all defendants and requests that the Court grant "permanent injunctive relief to enjoin the Defendants from taking any action to interfere with its title or possession of the church property." These allegations are treated as true, and when liberally construed, state a claim upon which relief can be granted. Plaintiff gets the inference that all defendants are culpable.

We agree with Holy Trinity that, for the most part, these were not findings about anything Pastor Driver did in fact, because at no time in this case did the court properly sit as a fact-finder. *See, e.g.*, *Chick-A-Dilly Props., Inc. of Camden v. Hilyard*, 42 Ark. App. 120, 127, 856 S.W.2d 15, 19 (1993) ("[T]he mere fact that both parties seek summary judgment does not constitute a waiver of a full trial or the right to have the case presented to a jury." (quoting 10A Charles A. Wright et al., Federal Practice and Procedure § 2720, at 19 (2d ed. 1983))). The court's statements, a blend of Rule 12(b)(6) and Rule 56 analyses in our view, is at one time an expression of *inferences* the circuit court made under the Rule 12(b)(6) standard it assumed should apply; at other times, the affidavits and documents of record are credited and weighed in a manner resembling a bench trial more than even a summary-judgment analysis.

With few exceptions, the denial of a Rule 12(b)(6) motion is not reviewable by appeal. *Courtney v. Ward*, 2012 Ark. App. 148, 391 S.W.3d 686. No exception would apply here. But because the court considered the proof Pastor Driver attached to her

4

motion, we treat this as a ruling denying a motion for summary judgment, not a Rule 12(b)(6) motion.[3]

We generally cannot review those either. *Harris v. City of Fort Smith*, 359 Ark. 355, 197 S.W.3d 461 (2004); *C&R Constr. Co. v. Woods Masonry & Repair, LLC*, 2020 Ark. App. 105, 596 S.W.3d 35. But if the circuit court enters judgment on cross-motions for summary judgment, granting one and denying the other, we sometimes can. *Cannady v. St. Vincent Infirmary Med. Ctr.*, 2018 Ark. 35, 537 S.W.3d 259; *Diamond K. Invs., Inc. v. 1330 LLC*, 2024 Ark. App. 433, 698 S.W.3d 653. And we can here. Typically, in this posture, the parties "essentially agree that there are no material facts remaining, and summary judgment may be an appropriate means of resolving the case." *Ark. Cap. Corp. v. Salamone*, 2022 Ark. App. 447, at 17, 655 S.W.3d 701, 712 (quoting *Union Pac. R.R. Co. v. SEECO, Inc.*, 2016 Ark. App. 466, at 8, 504 S.W.3d 614, 620). Our review is de novo. *Gates v. Hudson*, 2025 Ark. 48, 711 S.W.3d 142.

If the circuit court had stopped at adjudicating title for Holy Trinity and the judgment was harmless to Pastor Driver, we would not decide whether she should have been dismissed before it was entered. A case is moot when any judgment rendered "would not have any practical legal effect upon a then existing legal controversy." *Ark. Dep't of Hum. Servs. v. Ledgerwood*, 2019 Ark. 121, at 6, 571 S.W.3d 911, 915. In *Poland v. Poland*, we recognized a mootness exception for civil appeals where findings in a judgment might

---

[3]*Franklin v. City of Ozark*, 2025 Ark. App. 308, 715 S.W.3d 882. Earlier in the case, Pastor Driver urged the court to deny a motion for summary judgment because Holy Trinity filed it less than forty-five days before a scheduled trial date, the cutoff in Ark. R. Civ. P. 56(a). She filed her proof-supported motion citing Rule 12(b)(6) ten days before a scheduled trial date.

have collateral legal consequences for the appellant though the relief has expired. 2017 Ark. App. 178, 518 S.W.3d 98. We noted that Arkansas statutes made a past domestic order of protection relevant in later protective-order and child-custody proceedings. *Id.* at 8–9, 518 S.W.3d at 103.

Pastor Driver does not identify any similarly concrete legal consequences from a finding that she "wrongfully interfered with" Holy Trinity's legal rights. But the circuit court awarded costs of $677.79 payable by the defendants (including her), jointly and severally. And after the Bethel Temple defendants filed their first notice of appeal, Holy Trinity filed a petition for supplementary relief seeking "money damages necessitated and warranted by the Defendants' wrongful taking, altering, and removal of its property." The petition is still pending. Refusing to review the finding that Pastor Driver acted wrongfully in connection with the sale of the property might prejudice her in proceedings on that petition.[4] Consequently, we review the merits and reverse the court's order as to Pastor Driver.

Holy Trinity sought a declaratory judgment. Because the court can "declare rights, status, and other legal relations" among the parties "whether or not further relief is or could be claimed[,]" Ark. Code Ann. § 16-111-101 (Repl. 2016), a complaint for declaratory relief does not have to set out a classic plaintiff-versus-bad-guy cause of action. *See, e.g., Clement v. Larkey*, 314 Ark. 489, 863 S.W.2d 580 (1993) (affirming declaratory judgment

---

[4]A petition for supplementary relief filed after the circuit court enters a final declaratory judgment does not affect its finality for appeal. *WPH, LLC v. Ferstl Consulting, LLC*, 2025 Ark. App. 118, 708 S.W.3d 375. Apart from making that appellate-jurisdiction point, we leave those proceedings, and any effect of this decision, to the parties and the circuit court.

that contemplated distribution of trust property that would unequally benefit one beneficiary would not breach trustee's duties to the other.)

> Declaratory relief requires
>
> (1) a justiciable controversy; that is to say, a controversy in which a claim of right is asserted against one who has an interest in contesting it; (2) the controversy must be between persons whose interests are adverse; (3) the party seeking declaratory relief must have a legal interest in the controversy; in other words, a legally protectable interest; and (4) the issue involved in the controversy must be ripe for judicial determination.

*Palade v. Bd. of Trs. of the Univ. of Ark. Sys.*, 2022 Ark. 119, at 7, 645 S.W.3d 1, 5. Further, a declaratory judgment binds only the parties to the action, and "all persons shall be made parties who have or claim any interest which would be affected by the declaration."[5]

Holy Trinity's complaint presented a justiciable controversy with Bethel Temple about who had title. It sought to cancel deeds in Bethel Temple's chain of title. The Butler defendants and Bethel Temple had to be parties because they were parties to the deeds. *See Oliver v. Clifton*, 59 Ark. 187, 26 S.W. 817 (1894). In fact, "all persons whose rights might be affected by the determination of a controversy involving land must be made parties to an action." *Williams v. Hall*, 98 Ark. App. 90, 101, 250 S.W.3d 581, 588 (2007). The allegation that Pastor Driver knew about a title defect was fair to plead because that could affect whether Bethel Temple was a bona fide purchaser, for example. *See McDonald v. Rankin*, 92 Ark. 173, 122 S.W. 88 (1909); *see also* Restatement (Second) of Trusts § 284 (1959).

---

[5]Ark. Code Ann. § 16–111–111(a) (Supp. 2023).

Whether Pastor Driver could or should also have been named as a party to the action is a more difficult question. Ultimately, we don't need to answer it. Whatever claim Holy Trinity meant to state against Pastor Driver, if any, it also failed to support with proof to meet the summary-judgment standard. The circuit court's denial of her motion must therefore be reversed.

Holy Trinity introduced three warranty deeds:

- A 10 July 1989 warranty deed from Robert Butler and Mary Butler, husband and wife, to Robert Butler, Mary Butler, Mildred Yancey, L.T. Garrett, and Edna Ross Colbert as trustees for the East End Church of God in Christ;

- A 30 July 2019 warranty deed from Mary Butler as sole remaining trustee for the East End Church of God in Christ to Mary Butler, Janifer Montgomery, and Brenda Butler as trustees for Holy Trinity Church of God in Christ; and

- A 27 January 2020 warranty deed from Mary Butler, as sole trustee of Holy Trinity Church of God in Christ, to Bethel Temple Pentecostal Church, Incorporated.

In the August 7 judgment, the circuit court incorporated its May 9 finding that "all defendants have been parties to the deeds in question." But that is not true for Pastor Driver. No deed in the record includes her.

Holy Trinity introduced affidavits from its current pastor, Marcus Butler (son of defendant Mary Butler), and Jewel Withers, Jr., a jurisdictional bishop of the Church of God in Christ, to the effect that the property was held in trust for the congregation under restrictions imposed by the church's constitution. Specifically, the property could not be sold without the congregation's consent and Bishop Withers's approval, and neither was given. Bishop Withers explained those restrictions at a church meeting the Butler defendants attended. He swears that he authorized Holy Trinity's counsel to convey to

them *and* Pastor Driver that Mary Butler lacked authority to sell the property. But he could not swear counsel did so before the sale: he says only "[u]pon information and belief" that the sale took place "despite all Defendants' knowledge" of that contention.

Pastor Marcus explained that the East End Church of God in Christ, whose trustees were grantees in the 1989 deed, was officially renamed "Holy Trinity Church of God in Christ on or about January 1990" when the congregation moved to a new building. But he says the Butler defendants who signed the deeds as Holy Trinity's trustees either were not its trustees, or were not sole trustees, when they signed.

We assume for this appeal, which does not involve the title issue, that the affidavits tend to show the Butler defendants lacked authority to convey the property and knew that before the sale.[6] But the proof of knowledge stops on their side of the transaction. Pastor Driver swears that no attorney—and no one else associated with Holy Trinity or the Church of God in Christ—expressed any objection before closing. It was not until months later, after the check cleared, that she learned of any issue. No proof in the record contradicts her on that point to put that material fact at issue.[7]

In fact, this trustee-authority issue is not the "questionable title" issue Holy Trinity contends Pastor Driver knew about. It says she received a title-insurance policy that

_____

[6]Appeals involving title to church property can be complicated. *See Ark. Presbytery of Cumberland Presbyterian Church v. Hudson*, 344 Ark. 332, 40 S.W.3d 301 (2001); *First Presbyterian Church of Magnolia v. Presbytery of the Pines*, 2020 Ark. App. 253, 600 S.W.3d 126.

[7]The circuit court found that Bethel Temple made the check out to Mary Butler in her individual capacity, not as trustee. Holy Trinity states so in its appellate brief, citing its counsel's argument at the motion hearing. We can find no supporting proof in the record.

9

identified "Holy Trinity Church of God in Christ" as the property's fee-simple owner. That is, Holy Trinity seems to contend that allowing Bethel Temple to go forward with the sale was wrongful because Holy Trinity itself—not its trustees, whoever they were—held legal title.

The summary-judgment-related evidence says otherwise. An unincorporated nonprofit association "may acquire, hold, encumber, or transfer in its name" an interest in real property. Ark. Code Ann. § 4-28-606(a) (Repl. 2016). Even so, there was no evidence *this* unincorporated association held legal title to *this* property. A court's "first task when applying the neutral-principles approach" to resolve disputes about ownership of church property "is to review the language of the deed[s]." *First Presbyterian Church of Magnolia*, 2020 Ark. App. 253, at 7, 600 S.W.3d at 130. All three deeds in the record were to or through trustees, consistent with Bishop Withers's sworn statement that property owned by member churches "is to be held by . . . the local church's trustees in trust for the use and benefit of the local church." There is no deed to Holy Trinity itself.

The Revised Uniform Unincorporated Nonprofit Association Act "reverse[d] the common law rule" that an unincorporated association is not a legal entity. Ark. Code Ann. § 4-28-606(a) editors' note 1, unif. law cmt. (West current through May 8, 2025). But the common-law workaround for that rule was for trustees to hold legal title for the association's benefit. *See Weaver v. First Nat'l Bank of Memphis*, 216 Ark. 199, 224 S.W.2d 813 (1949); *Lael v. Crook*, 192 Ark. 1115, 97 S.W.2d 436 (1936); Restatement (Second) of Trusts § 397 cmt. f (1959). The pre-Act 1989 warranty deed to the trustees of the East End Church of God in Christ seems to have been made in that spirit. We see no indication in the Act that

10

the General Assembly meant to convert unincorporated associations' beneficial interests under existing arrangements to legal title automatically. In fact, the Act reaffirms that an unincorporated association can "be a beneficiary of a trust." Ark. Code Ann. § 4-28-606(b).

★ ★ ★

The circuit court treated the May 9 adjudication of motion papers as a bench trial light on the merits instead of applying the usual summary-judgment analysis. Along the way, the court sometimes credited Holy Trinity's side of conflicting evidence instead of reserving for trial the judgment on whose view of which events to believe. More importantly for this appeal, no evidence supported Holy Trinity's allegation that Pastor Driver "had notice of the questionable title prior to the sale"—the only allegation that kept her in the lawsuit. We hold that the circuit court erred by denying her motion to dismiss the action as to her, the motion being more properly one for summary judgment given the affidavits and documents she and others had presented. Further, on this record and procedural posture, we do not believe the circuit court could properly find that Pastor Driver would have "wrongfully interfered with the legal rights of Holy Trinity" (whatever that may mean) by assuming legal title to the property lay with its trustees, as all the deeds in the record implied. Therefore, to the extent the circuit court adjudicated Pastor Driver as having personally and wrongfully interfered with Holy Trinity's rights, that decision is reversed.

Our decision does not affect the circuit court's ruling adjudicating title in Holy Trinity—a decision that, as mentioned earlier, no party appealed.

Reversed.

11

KLAPPENBACH, C.J., and HIXSON, J., agree.

*Thompson Law Firm, PLLC*, by: *Theodis N. Thompson, Jr.*, for appellants.

*Judy Wilber*, for appellee.